[S. F. No. 5967. Department Two.—June 12, 1913.]

AUGUSTA C. OSMONT et al., Respondents, v. ALL PER-
SONS etc., Defendants and Respondents; ELIZABETH
A. HEYDENFELDT et al., Appellants.

Judgment by Default—Defendant not Personally Served—Right
to Open Default—Necessary Showing.—Under section 473 of the
Code of Civil Procedure, the right of a defendant, who has not been
personally served with summons, to have his default opened, is not
absolute and unconditional. To secure the enjoyment of this right
he must (1) make timely motion within a year, (2), establish that
he has a meritorious defense, and (3), comply with such reasonable
terms as the court may impose in granting his motion. When all
this has been satisfactorily shown and done, the right of the mov-
ing party does become absolute and is not lost because the court
postpones its decision upon the motion until the year has elapsed.

Id.—Motion Made Within a Year—Decision After Lapse of Year—
Jurisdiction not Lost.—Where a motion to open such a default
was made and noticed within the year, the court did not lose juris-
diction to grant it by reason of the fact that, upon his own initia-
tive, the matter was submitted to him for decision and was in fact
decided after the lapse of the year.

Id.—Order Granting Takes Effect Nunc Pro Tunc as of Date of
Motion.—Such motion having been timely made, it was within the
jurisdiction of the trial court, if it was properly supported in other
respects, to have granted it, and the order granting would take
relation *nunc pro tunc* as of the date of the making of the motion,
and not as of the date of its submission.

Id.—Where Nunc Pro Tunc Orders are Authorized.—Whenever jus-
tice requires it, if no express statute prohibiting it stands in the
way, the courts of this state have always countenanced the entry of
*nunc pro tunc* orders to preserve substantial rights, and such orders
are made *nunc pro tunc* not alone to supply deficiencies in the record
of previous orders or judgments, but they are ordered entered *nunc
pro tunc* when no previous judgment or order upon the matter has
been made, though always to preserve and never to impair the rights
of litigants.

Id.—McEnerney Act—Proceeding to Establish Title—Motion to
Vacate Default and Judgment by Defendants not Served—
Extent of Permissible Relief.—In a proceeding to establish title
under the so-called McEnerney Act, defendants who were not per-
sonally named nor served are not deprived of the right to have their
default set aside and the judgment vacated as to them, merely be-

cause, in addition to asking for such relief, they also moved for the setting aside of the default of all other defaulting defendants and the vacation of the judgment *in toto*. On such motion, the court could grant the relief asked so far as it affected the rights of the moving parties, but could not open the default of all others nor vacate the whole judgment.

ID.—AFFIDAVIT OF MERITS ON MOTION TO OPEN DEFAULT—SETTING FORTH FACTS SHOWING DEFENSE—DENIAL FOR INSUFFICIENT SHOWING OF DEFENSE.—On a motion by a defendant who had not been personally served with summons to open his default, it is not essential that the affidavit of merits should disclose the facts constituting the defense, if it declares that such facts have been submitted to his attorney at law and that he is by such attorney advised that he has a good and meritorious defense. If, however, in addition to such declaration, the affidavit sets forth the facts claimed to constitute such defense, the court, on the hearing of the motion, is authorized to review them, and if they do not show a meritorious defense, the motion should be denied.

ID.—FRAUDULENT DECREE OF DISTRIBUTION—STATUTE OF LIMITATIONS —PLEADING—DISCOVERY OF FRAUD WITHIN THREE YEARS OF ACTION.—The right of a party to invoke the aid of a court of equity for relief against fraud in procuring a decree of distribution, after the expiration of three years from the time when the fraud was committed, is an exception to the general statute of limitations, and cannot be asserted unless the plaintiff brings himself within the terms of the exception. This can only be done by a showing that he did not discover the facts constituting the fraud until within the three years immediately prior to the commencement of the action. This showing is an essential element of the right of action and must be affirmatively pleaded in order to authorize the court to entertain the action.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a motion for an order setting aside the default of all persons and vacating a judgment entered for the plaintiffs in a proceeding to establish title to land under the so-called McEnerney Act. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

James G. Maguire, and Lent & Humphrey, and R. P. Henshall, and Luther Elkins, *Amici Curiae,* for Appellants.

Drown, Leicester & Drown, for Plaintiffs and Respondents.

Smith & Pringle, James A. Ballentine, Frank Shay, Charles F. Hanlon, Campbell, Metson, Drew, Oatman & MacKenzie, and Percy V. Long, City Attorney, for other Respondents.

HENSHAW, J.—This action, brought under the McEnerney Act, was commenced in August, 1909. Plaintiffs pleaded their deraignment of title through and under the decree of distribution given in the estate of Solomon Heydenfeldt, deceased, by which decree the land involved in the action was distributed to one Mangels, by him deeded to Thomas M. Osmont, the husband of Augusta C. Osmont, and upon the death of Thomas M. Osmont, intestate, the vestiture of title in them as heirs. Trial was had, findings were signed on September 17, 1909, and filed on September 18, 1909, upon which last named day the judgment was entered. This judgment decreed title in plaintiffs to certain specific interests in the properties. Upon the morning of September 16, 1910, appellants served their notice of motion to set aside the default of all persons who did not appear in the action and to set aside and vacate the judgment and decree and to permit the moving parties to answer. This motion was noticed for 1:45 P. M. of the same day on which the notice was served. At that time the notice and the affidavits annexed thereto were filed and the moving parties asked the court to grant the motion. The hearing was continued by the court to September 23rd. On that day the plaintiffs presented and filed written objections and grounds of opposition. On the 19th day of December, 1910, the court denied the motion in a written opinion, stating: "I am forced to conclude that inasmuch as more than one year has elapsed since the rendition of the judgment, this court has no power to set aside the judgment or to permit an answer to be filed by the moving parties." At the hearing of this motion at 1:45 P. M. of September 16th, not only were the plaintiffs represented, but the city and county of San Francisco and the Southern Pacific Company, both parties in interest, appeared by their attorneys in opposition to the motion. Upon objection by these attorneys that the motion should be denied, since the moving parties had neglected to file an affidavit of merits, and after the hearing had been continued as above stated, the moving parties, without notice to any one, appeared in court at 4 o'clock of the afternoon

of the same day, and presented a new motion to the same effect, which new motion was based upon the same grounds and supported by the same affidavits, orders, papers, records, and files, with the addition of affidavits of merit made by Elizabeth A. Heydenfeldt and Elfin O. Heydenfeldt, the moving parties. We will, however, treat these two motions as one, not only because they were so treated by the trial court, but because the second motion was without notice, and was made when the previous noticed motion covering the same subject matter had been continued by the court. The second motion being without notice could not properly have been decided by the court at the time when appellants asked for the court's ruling. (*Brownell* v. *Superior Court,* 157 Cal. 703, [109 Pac. 91]; *Andreen* v. *Andreen,* 15 Cal. App. 728, [115 Pac. 761].) The court therefore properly continued the hearing, and at the hearings that were subsequently had the two motions, if they may be called two motions, were treated as merged and were decided as one.

The motion is founded upon the oft-quoted language of section 473 of the Code of Civil Procedure, providing for the opening of defaults and permission to answer within a year in cases where the summons in the action has not been personally served on the defendant,—the moving party. The circumstances and conditions under which such an application should be granted, and the showing required of the moving party, have received such thorough consideration from this court, that it is unnecessary to do more than to refer to *Gray* v. *Lawlor,* 151 Cal. 352, [12 Ann. Cas. 990, 90 Pac. 691], and *Boland* v. *All Persons,* 160 Cal. 486, [117 Pac. 547].

The right of a defendant, who has not been served with summons, to have his default opened is not absolute and unconditional. To secure the enjoyment of this right he must first make timely motion within the year, second, establish that he has a meritorious defense, and, third, comply with such reasonable terms as the court may impose in granting his motion. When all this has been satisfactorily shown and done, the right of the moving party does become absolute and is not lost because the court postpones its decision upon the motion until the year has elapsed. The motion under consideration was made and noticed within the year, and the learned judge construed the statute too narrowly in holding

that he had lost jurisdiction to act by virtue of the fact that, upon his own initiative, the matter was submitted to him for decision and was in fact decided after the lapse of the year. For it appears that the decision of the motion was sought by the moving parties upon the day when it was made, and that the hearing, over their objection, was by the court continued to a date after the year had expired. The familiar maxim, *Actus curiae neminem gravabit* here becomes applicable. There was a period in our judicial history when terms of court were recognized. It was then the established law that a judgment could not be vacated after the adjournment of the term. When, however, a motion for such a vacation was made during the term, and not decided until after the adjournment, the reasoning and the rule were that the jurisdiction was preserved by such motion or other appropriate proceeding, that the decision of the motion could be made after the adjournment of a term, and, when made, operated by relation as of the time when the motion was made. (*Carpentier* v. *Hart*, 5 Cal. 406; *Shaw* v. *McGregor*, 8 Cal. 521; *De Castro* v. *Richardson*, 25 Cal. 51; *Brackett* v. *Banegas*, 99 Cal. 623, [34 Pac. 344].) To the motion here under consideration these principles are applicable, and the decisions apposite. The motion having been timely made, it was therefore within the jurisdiction of the trial court, if the motion was properly supported in other respects, to have granted it, and the order granting would take relation *nunc pro tunc* as of the date not of the submission of the motion, but as of the date of the making of the motion. As to *nunc pro tunc* orders, it is true that certain courts in treating of them feel themselves bound by narrow, technical, and rigid rules. Such courts hold that the sole office of a *nunc pro tunc* order is to supply a deficiency in the record under a previous order, judgment or decree actually given, so as to make that previous order, judgment or decree conform to verity. Such indeed is an important function performed by a *nunc pro tunc* order. But in the view of this court it is not its sole or exclusive function. Whenever justice requires it, if no express statute prohibiting it stands in the way, the courts of this state, under the guidance of this court, have always countenanced the entry of *nunc pro tunc* orders to preserve substantial rights, and such orders are made *nunc pro tunc* not alone to supply deficiencies

in the record of previous orders or judgments, but they are ordered entered *nunc pro tunc* when no previous judgment or order upon the matter has been made, though always, as has been said, to preserve and never to impair the rights of litigants. This principle is enunciated in such cases as *Fox v. Hale & Norcross,* 108 Cal. 478, [41 Pac. 328], and *De Leonis* v. *Walsh,* 140 Cal. 178, [73 Pac. 813]. And that it is a favored rule is recognized by the supreme court of the United States, which says: "The rule established by the general concurrence of the American and English courts is, that where the delay in rendering judgment or decree arises from the *act of the court,* that is, where the delay has been for its convenience, or has been caused by the multiplicity or press of business, or the intricacy of the questions involved, or for any other cause not attributable to the laches of the parties, but within the control of the court, the judgment or decree may be entered retrospectively, as of a time when it should or might have been entered up. . . . Whether a *nunc pro tunc* order should be made, depends upon the circumstances of the particular case. It should be granted or refused, as the justice of the cause may require." (*Mitchell* v. *Overman,* 103 U. S. 63, [26 L. Ed. 369].)

The conclusion thus reached, that it was within the jurisdiction of the court to have passed upon the merits of the motion and to have decided accordingly, does not however make a final disposition of this appeal. There is still to be considered whether or not cause was shown which should have impelled the court to grant the motion upon its merits. Herein it is conceded that defendants were not personally served, and indeed were not personally named as defendants in the action. It is true that the motion itself seeks not only leave to answer for the moving parties but for all other defaulting persons and defendants and asks also that the judgment be vacated. But the fact that the moving parties asked for greater relief than the law entitles them to is of course no ground for denying them any relief to which they are entitled. The court could not, upon the motion of these two persons, asserting an interest in the property, open the default of all others nor vacate the whole judgment. (*McKinley* v. *Tuttle,* 34 Cal. 235.) The most that it would be warranted in doing would be the vacating of the default and the opening of the

judgment so far as it affected the rights of the moving parties
so that they might answer to the merits.

We come thus to the defense of these moving parties, which
it is said is valid, meritorious, and sufficient to demand that
the court should have permitted them to answer in accord-
ance with it. That defense, as shown by the affidavits, the
decree of distribution in the estate of Solomon Heydenfeldt
and the other papers filed with and made a part of the motion,
is this: Of the moving parties, one, Elizabeth A. Heyden-
feldt, is the widow, and the other, Elfin O. Heydenfeldt, is a
daughter, of Solomon O. Heydenfeldt, deceased. Solomon O.
Heydenfeldt died testate, leaving a widow and many children.
Those children were Sunshine O. Heydenfeldt (now Sunshine
O. Love), Thor O. Heydenfeldt, Oxen O. Heydenfeldt, Elfin
O. Heydenfeldt, Moody O. Heydenfeldt, Solomon Heyden-
feldt, Jr., Thomas O. Heydenfeldt, Frederick O. Heydenfeldt,
Zeila O. Hellings, and Ine O. Heydenfeldt. Litigation arose
within the estate between certain of the heirs and devisees,
and there was further litigation instituted by others asserting
rights against the estate. In particular, Thomas O. Heyden-
feldt and Zeila O. Hellings, after a partial decree of distribu-
tion had been made to others interested in the estate, secured
a judgment against the estate. This judgment was embar-
rassing for the others heirs and devisees to meet, as they were
called upon to do, out of the property which they had re-
ceived under partial distribution. These difficulties and all
this litigation resulted in a compromise adjustment and set-
tlement, joined in by all of the parties in interest and adopted,
acted upon and embodied in the decree of final distribution
which the court entered. As a part of this settlement it was
necessary to pay the attorneys employed in the litigation.
Thomas M. Osmont had been one of those attorneys. At the
hearing all the parties in interest appeared or were repre-
sented, G. H. Mangels appearing by his attorney T. M. Osmont.
To Mangels was distributed the residuum of the estate ''real,
personal and mixed, of whatever kind or nature, and wherever
situated, now known or hereafter known or discovered,'' sav-
ing and excepting certain specified property, and it was fur-
ther declared in the decree that ''the properties hereinabove
distributed to G. H. Mangels and particularly the residuary

CLXV Cal.—38

interest distributed to him, are out of the interests of Thomas
O. Heydenfeldt and Zeila O. Hellings, and in payment of the
indebtedness of said Thomas O. Heydenfeldt and Zeila O.
Hellings to the said G. H. Mangels.'' Mangels was a clerk in
the law office of Thomas M. Osmont, and it is alleged that the
decree of distribution was made in his favor at the instance
and request of Osmont. Mangels in turn conveyed all of the
property which he received from the decree to Osmont.
Osmont, it is asserted, was at the time and previously had been
''an attorney for some of the parties interested in said estate.''
The names of these parties are not given, though from the
fact above appearing, that the property distributed to Mangels
is declared to be taken ''out of the interests of Thomas O.
Heydenfeldt and Zeila O. Hellings, in payment of the indebt-
edness of Thomas O. Heydenfeldt and Zeila O. Hellings to
the said G. H. Mangels,'' it would appear that Thomas O.
Heydenfeldt and Zeila O. Hellings were the parties inter-
ested in the estate whom Osmont represented. It is then
asserted that the property here in controversy was not inven-
toried, nor by description distributed as a part of the estate;
that the parties entitled to the residuum of the estate did not
know that it was a part of the estate, and (so proceeds the
affidavit) : ''The parties entitled to the residue of said estate
would not have consented to the arrangement if they knew it
included the property described in said complaint and none
of the parties asking to have said order set aside would have
consented to such arrangement if they knew said property
was an asset of said estate or that it passed by said decree.''
It is then declared: ''that it was not agreed or even contem-
plated, that the property described in said complaint in this
action was to be distributed to him or to said Mangels for him,
as no one, other than said Osmont, knew of its existence as
an asset of this estate or otherwise, and this knowledge was
never communicated by him to this affiant or to his clients,
or to the parties to the annexed motion, and the knowledge
which he has concerning it, although it should have been im-
parted to the parties, was fraudulently suppressed by him.''
Then follow averments to the effect that the affiants have
fairly stated the facts constituting their defense to their at-
torneys at law and are by them advised that they have a good
and sufficient defense to the action upon the merits thereof.

We think it clear that these allegations do not establish the meritorious defense which alone justifies the court in opening the default. It is true that it has been held not essential that the affidavit of merits should disclose the facts constituting the defense, if the affidavit, as here, declares that the facts constituting it have been submitted to the moving party's attorney at law and that the moving party is by such attorney advised that he has a good and meritorious defense. (*Francis* v. *Cox,* 33 Cal. 323; *Tuttle* v. *Scott,* 119 Cal. 588, [51 Pac. 849] ; *Rauer Law etc. Co.* v. *Gilleran,* 138 Cal. 354, [71 Pac. 445].) Nevertheless this substitution of the judgment of the moving party and his counsel for that of the court does not and should not apply where the facts which are declared to constitute this defense are themselves stated. This would be a most illogical extension of the rule in that it would force the court to accept as conclusive the judgment of the moving party and his attorney upon stated facts which the court itself believes to be insufficient and inconclusive. (Freeman on Judgments, sec. 108.)

Thus, coming to a consideration of the sufficiency of the defense, it is at once apparent that the defense is attempted to be founded upon the fraud of plaintiffs' ancestor in his dealings with the Heydenfeldt estate, and with the interest of these moving parties therein, and that it seeks to establish against the plaintiffs and in favor of the moving parties some sort of resultant trust to all or some part of the real property growing out of such fraud. But even a brief analysis of the affidavits will disclose their insufficiency for this purpose. Thus, it is not made to appear that Osmont was the attorney for either of the moving parties, and thus it is not shown that he owed them any duty of disclosure either in law or in equity. It is asserted that the moving parties did not know that the property was a part of the estate, but it is not even alleged that Osmont himself knew this fact, the allegation herein being inferential and evasive to the effect that "no one other than said Osmont knew of its existence as an asset of the estate." It is true that it is asserted that Osmont did not communicate this knowledge to the affiants or to his clients, but so far as his clients are concerned—and they are the only ones who would have a right to complain—they are not complaining. It is alleged that the knowledge, which only by

inference can it be said it is asserted that Osmont possessed, "should have been imparted to all the parties and was fraudulently suppressed by him." But this is manifestly the mere conclusion of the affiant and is a conclusion which is not warranted by the facts stated. And, finally, it is to be remembered that the decree of distribution was entered in 1901. The cause of action to set this aside for fraud then immediately arose, and was barred in three years from that date. The right of action upon the fraud of Osmont in procuring the decree, to the end that he might be charged as trustee, is itself barred in three years after the discovery of the fraud. The right of a party to invoke the aid of a court of equity for relief against fraud after the expiration of three years from the time when the fraud was committed is an exception to the general statute and cannot be asserted unless the plaintiff brings himself within the terms of the exception. This can only be done by a showing that he did not discover the facts constituting the fraud until within the three years immediately prior to the commencement of his action. This showing is an essential element of the right of action and must be affirmatively pleaded in order to authorize the court to entertain the action. (*Sublette* v. *Tinney,* 9 Cal. 423; *Watkins* v. *Bryant,* 91 Cal. 492, [27 Pac. 775]; *Castro* v. *Geil,* 110 Cal. 292, [52 Am. St. Rep. 84, 42 Pac. 804]; *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482, [45 Pac. 809].) No such showing is here made.

It follows herefrom that the court's order refusing to vacate appellants' default was proper and it is therefore affirmed.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.