[S. F. No. 7954. Department Two.—September 3, 1918.]

## ELIZABETH A. HEYDENFELDT et al., Appellants, v. AUGUSTA C. OSMONT et al., Respondents.

ESTATES OF DECEASED PERSONS—DISTRIBUTION OF RESIDUE TO ATTORNEY —ACQUISITION OF REAL PROPERTY—ABSENCE OF FRAUD.—A con- structive trust in favor of the devisees, legatees, and heirs at law of a deceased person will not be impressed on real property received under the provision in the decree of distribution distributing to an attorney at law, who had represented certain heirs in litigation over the estate, the residue of the estate without specific description, on the ground that such attorney had special knowledge of the ' exist- ence of such property, and failed to disclose it, where such decree was entered pursuant to the terms of a compromise agreement set- tling all litigation, and the parties interested knew or had the means of knowing the terms and significance of the decree, and the same means of acquiring knowledge of the record title to the property as the distributee.

ID.—CONCEALMENT OF CLAIM OF TITLE—EFFECT OF—STATUTE OF LIMITA- TIONS.—Under such circumstances, the concealment by the attorney of his claim of title to the property could have worked no injury to the persons interested; its only effect was to postpone the run- ning of the statute of limitations against them.

ID.—DECREE OF DISTRIBUTION—OMNIBUS CLAUSE—PASSING OF TITLE.—
A decree of distribution which by its terms distributes a residue
known or unknown is sufficient to pass title to lands omitted from
the particular description.

ID.—DISTRIBUTION OF RESIDUE OF ESTATE—CONCLUSIVENESS OF DECREE.
By a decree of distribution the court is required to distribute all
the residue to the persons entitled, and its order and decree are
conclusive in this regard as to the rights of all distributees.

ID.—ABSENCE OF CONFIDENTIAL RELATION—SILENCE NOT FRAUDULENT.—
In the absence of confidential relations, mere silence without fraudu-
lent acts or omissions connected therewith would not be unconscion-
able.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order deny-
ing a new trial. Geo. E. Crothers, Judge.

The facts are stated in the opinion of the court.

Edward E. Cothran, James G. Maguire, and R. P. Henshall,
for Appellants.

Drown, Leicester & Drown, for Respondents.

MELVIN, J.—Plaintiffs, who are appellants here, began
this action in equity in which they prayed for a judgment
declaring that defendants hold only the bare legal title to
five parcels of real property in the city and county of San
Francisco. Plaintiffs also asked for judgment that defend-
ants have no right, title, or interest in the property, and they
prayed also for general equitable relief.

The appeal is from the judgment and from an order deny-
ing the motion of plaintiffs for a new trial.

The basis of this litigation is the same fraud on the part
of the predecessor of defendants which these plaintiffs sought
unsuccessfully to set up in their petition to vacate the judg-
ment in a suit quieting the title of the successors of Thomas
M. Osmont to this very property. (*Osmont* v. *All Persons,*
165 Cal. 587, [133 Pac. 480].) Although many of the allega-
tions contained in the complaint in this case are essentially
the same as those pleaded in the petition considered by this
court on the appeal in the case cited above, it may be well
to outline briefly the circumstances leading to this litigation.

The controversy in this action involves only the fee-simple title to the reversion in certain "City Slip Lots" following the expiration of the grant from the state of California to the use and occupation of the property for ninety-nine years after March 26, 1851. The record reveals the following facts:

Solomon Heydenfeldt died testate in 1890, owning at the time of his death the fee-simple title to the land here in controversy, subject to the grant above specified. His will contained a residuary clause devising and bequeathing to his wife, Elizabeth A. Heydenfeldt, a life estate in all property not otherwise disposed of, with remainder over to her children (the other plaintiffs herein), said property to be distributed to them share and share alike at the death of their mother unless by her will she should make a different and unequal distribution. Litigation arose over the estate and was in progress for a number of years. In it Thomas M. Osmont, Esq., an attorney and counselor at law, represented Thomas O. Heydenfeldt and Zeila O. Hellings, who were children and heirs (but not devisees or legatees) of Solomon Heydenfeldt, deceased.

In 1901 a compromise agreement was made whereby the devisees, legatees, heirs at law, and others who had claims against some of them bound themselves to abide by a certain settlement and adjustment of all litigation and of their respective shares of the estate. This agreement contemplated the filing of a petition for final distribution in the *Estate of Heydenfeldt* praying for division of all the property in accordance with the terms of said contract. One of the claims against Mr. Osmont's former clients was for fees. This was made, however, by his assignee, G. H. Mangels, who was his clerk. In the compromise and the negotiations and court proceedings connected therewith Mr. Osmont appeared as attorney for said Mangels.

It is cheerfully conceded by appellants that "At all times pending the administration and settlement of the estate of Solomon Heydenfeldt, deceased, and at the time of the execution of said compromise agreement and of the making of the decree of distribution of said estate, all the attorneys of all the parties were in a position to ascertain the right, title, and interest of Solomon Heydenfeldt, deceased, as disclosed by the public records." It is asserted, however, that as Mr.

Osmont had in his possession the original deeds by which Solomon Heydenfeldt gave title to the property, it was his duty to disclose the information to the other parties to the compromise agreement.

Neither in that contract nor in the inventory in the estate, nor in the decree of final distribution, was this property described, but to Mangels was distributed all the rest and residue of the estate, "real, personal, and mixed, of whatever kind or nature, and wherever situated, now known or *hereafter known or discovered.*" This language followed · the provision of the agreement of compromise except that the last seven words of the decree are not in the other instrument, and one of the contentions of counsel for appellants is that Mr. Osmont (who approved the decree before it was signed), fraudulently sought to make it cover property not included in the contemplation of the other contracting parties, nor, indeed, in the terms of the agreement itself.

The lower court in this case found that when the decree of distribution was made no one of these plaintiffs nor any of their attorneys personally and actually knew that said real property was a part of the estate of Solomon Heydenfeldt, but that Mr. Osmont did have knowledge of that fact.

On August 27, 1903, Mangels executed a deed conveying his interest in this property to Thomas M. Osmont, but the deed did not contain any declaration that the grantor claimed title through the decree in the Heydenfeldt estate. This instrument was not recorded during Mr. Osmont's life, but was placed of record fifteen days after his death, and subsequently these defendants received by distribution all interest in the land which he had possessed at the time of his death. The date of Mr. Osmont's death was December 20, 1905. The decree of distribution in the *Estate of Osmont,* made on or about March 8, 1907, did not in terms declare that the fee in this real property was derived from the estate of Heydenfeldt.

In August, 1907, the persons who are here defendants began a "McEnerney action" to quiet their title to this property. They obtained a judgment and a decree, which was placed of record March 1, 1910. On September 16th of the same year the persons who are here plaintiffs moved to set aside the judgment, with the result which appears in *Osmont* v. *All Persons, supra.* The present action was commenced in

August, 1912, while the appeal in that case was pending and undetermined.

It was the theory of the counsel for appellants that one of the elements of Mr. Osmont's alleged fraud was his failure to disclose all knowledge which he possessed regarding the title of Heydenfeldt to the lands here involved. In that behalf it was alleged in the complaint that after the execution of the compromise agreement the decree of distribution was prepared by the attorneys for all of the interested parties acting in common accord and not in hostility one to another. The court correctly found against this contention. While Mr. Osmont had appeared for some of the claimants to shares of the estate of Heydenfeldt, he had ceased so to represent them, had been endeavoring to collect his fee, and the compromise agreement, drawn and executed at a time when his former clients were having independent advice, was made partly in settlement of that very controversy. In a sense, it is true that after the compromise was made the attorneys acted in concert in their efforts to have the court distribute the estate in accordance with the agreement, but that does not mean that any one of them was bound to disclose anything which the contract did not by its very terms or its clear intendment call upon him to divulge. They were still acting at arm's-length, each interested in getting the share allotted to him or his clients, and only concerned about the success of the whole enterprise because distribution according to the terms of the compromise was the agreed method by which that share might be promptly secured. There was no confidential relation between Mr. Osmont and the other attorneys or their clients which would require him to say to them or any one of them that he had knowledge not possessed by them regarding the residuum of the estate.

In this case appellants are confronted by two judgments, one evidenced by the decree of distribution and the other a judgment *in rem* in the action to quiet title. Assuming that an action in equity such as this will lie, under the authority of such decisions as *Soule* v. *Bacon,* 150 Cal. 495, [89 Pac. 324], against both judgments, we must consider the findings of the trial court that fraud was not proven either in the procurement of the decree in probate or the judgment *in rem.* We are of the opinion that these findings are amply supported by the evidence. These findings being supported,

we need not concern ourselves with any others, because the entire cause of action is based upon the supposed fraud of Mr. Osmont. Without findings that fraud existed there can be no recovery, therefore we shall confine ourselves almost entirely to a discussion of the support to be found for the court's decision on this branch of the case. (*American National Bank* v. *Donnellan,* 170 Cal. 9–15, [Ann. Cas. 1917C, 744, 148 Pac. 188].)

The "*omnibus* clause" in the decree of distribution, so far as the evidence disclosed, was not procured by fraud, nor was it so greatly at variance with the contract of compromise as to fail in the carrying out of that agreement. In the first place, it must be remembered that under the decisions of this court decrees which by their terms distribute a residue known or unknown are sufficient to pass title to lands omitted from the particular description. (*Smith* v. *Biscailuz,* 83 Cal. 344, [21 Pac. 15, 23 Pac. 314].) By such a decree the court is required to distribute all the residue to the persons entitled, and its order and decree are conclusive in this regard as to the rights of all distributees. (Code Civ. Proc., sec. 1666; *Humphry* v. *Protestant Episcopal Church,* 154 Cal. 170, [97 Pac. 187]; *Victoria Hospital Assn.* v. *All Persons,* 169 Cal. 455, [147 Pac. 124]; *Marcone* v. *Dowell, ante,* p. 396, [173 Pac. 465–468].) It was the duty of the court making the distribution to decide who was entitled to the residue. This was done and the appellants, who were parties to the compromise agreement and who in person or by counsel knew or had means of knowing the terms and the significance of the decree of distribution, are not now in a position to object to the inclusion of the "*omnibus* clause" in the decree. It was a contemporary interpretation of the contract of compromise to which they agreed.

The court found that there was no duty upon Mr. Osmont to declare his knowledge of the title of the Heydenfeldt estate to the lots in litigation here, and that finding is amply supported. In the absence of confidential relations, mere silence without fraudulent acts or omissions connected therewith would not be unconscionable. (*Bacon* v. *Soule,* 19 Cal. App. 428–439, [126 Pac. 384]; *Mulcahey* v. *Dow,* 131 Cal. 73, [63 Pac. 158].)

That the appellants had the same means as did Mr. Osmont of acquiring knowledge of the existence of Heydenfeldt's

record title to this property is not and of course cannot be denied. Indeed, there was a finding by the superior court in this case, which stands uncontested, to the effect "that the means of acquiring knowledge of the fact that said real property was at the time of the making of said decree of distribution, and long prior thereto, a portion of the property and estate of said Solomon Heydenfeldt, deceased, was at all times after the death of said Solomon Heydenfeldt open and accessible to the said plaintiffs, and to the said executors, and to any and all persons interested."

Further, the testimony was to the effect that Mrs. Barkley, who called Mr. Osmont's attention to the records of the ownership of these lands, derived her information from those who had been employed by Mrs. Elizabeth A. Heydenfeldt to look up property belonging to the estate and to search the records. Mrs. Barkley had seen Mr. Bracken, a searcher of records, with Mrs. Heydenfeldt. This man gave Mrs. Barkley a list of lots, which she in turn gave to Mr. Osmont, who then examined the titles. It further appears that Mr. Osmont, who at that time represented clients in hostility to these appellants, got permission to examine the original deeds which were in the possession of the executors of the estate. Doubtless, Mrs. Heydenfeldt eventually received these papers, for it is in evidence that upon the closing of the estate all the papers went to her. It also appears that upon receiving these documents from the estate for examination, Mr. Osmont signed a receipt for them. From such evidence the court might well conclude that he believed that the executors knew of this property, since his information was derived in part from papers in their custody. In addition to this, he knew that all of those interested in the estate were represented by able counsel, who at all times possessed opportunities quite equal to his own for learning of the record title to all property in the name of Solomon Heydenfeldt. Therefore, we conclude that the record supports the finding that no fraud tainted the distribution of the residuum of the estate to Mangels.

There was no fraud shown in the "McEnerney action," nor in the conduct of Mr. Osmont between the time of the signing of the decree of distribution and his death. It is undisputed that the possession of the land was and of right would be for many years in persons other than the owner of

the fee. There is nothing significant, therefore, in Mr. Osmont's failure to record the deed from Mangels, or in the omission from that deed of a description referring specifically to the decree of distribution. But in any event, the concealment of his claim of title could have worked no injury to appellants. Its only effect would be to postpone the running of the statute of limitations against them. Respondents did not *acquire* title by the decree in *Osmont* v. *All Persons.* That decree *established* their title, and if, as appellants contend, they hold the naked title in trust for said appellants, they must be trustees by reason of the fraud of their ancestor or his grantor in securing distribution through the residuary clause of the decree in the *Estate of Heydenfeldt.* But the finding of the superior court on that subject is sustained, and is contrary to the contentions of appellants.

The conclusion we have reached regarding the findings upon the matter of the alleged fraud make it unnecessary for us to comment upon the finding that the statute of limitations.was a bar to any recovery in this case.

The judgment and order are affirmed.

Wilbur, J., and Lorigan, J., concurred.

Hearing in Bank denied.