Filed 5/24/21 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BRANDON FELCZER et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>APPLE, INC.,<br><br>    Defendant and Respondent. | D077314<br>(Super. Ct. No. 37-2011-00102593-CU-OC-CTL)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |


THE COURT:

On the court's own motion, it is ordered that the opinion filed on April 23, 2021 be modified on page 2 at the end of "FACTUAL AND PROCEDURAL BACKGROUND," to add as footnote 1 the following, which will require renumbering of all subsequent footnotes:

> 1  Although Hogue & Belong, the law firm that represented plaintiffs in the trial court, was added as a party to the notice of appeal and treated as such by appellate counsel, the firm is not a party in this case.  Only parties of record may appeal.  (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736.)  "A party of record is a person named as a party to the proceedings or one who takes appropriate steps to become a party of record in the proceedings."  (*In re Miguel E.* (2004) 120 Cal.App.4th 521, 539.)  In order to become a party, Hogue & Belong could have petitioned the trial court for leave to intervene (Code Civ. Proc., § 387) or moved to vacate the judgment to

vindicate their interests after the court's orders. (*Carleson*, at p. 736; Code Civ. Proc., § 663.) The firm took neither of these steps.

There is no change in judgment.

HALLER, Acting P. J.

Copies to: All parties

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRANDON FELCZER et al., | D077314 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00102593-CU-OC-CTL) |
| APPLE, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed in part; reversed in part, with instructions.

Hogue & Belong, Jeffrey L. Hogue, Tyler J. Belong, Marisol G. Jimenez; Law Office of Martin N. Buchanan and Martin N. Buchanan for Plaintiffs and Appellants.

Carothers DiSante & Freudenberger, Timothy M. Freudenberger, Kent J. Sprinkle, Robin E. Largent, and Teresa W. Ghali for Defendant and Respondent.

This case presents a single question for our determination: in a civil case where the prevailing party is entitled to recover certain litigation expenses and attorney's fees from the losing party, when does postjudgment interest on an award of prejudgment costs begin to run? As we discuss below, accrual begins on the date of the judgment or order that establishes the right of a party to recover a particular cost item, even if the dollar amount has yet to be ascertained.

FACTUAL AND PROCEDURAL BACKGROUND

After five years of litigation that culminated in a lengthy combined jury and bench trial, plaintiffs representing a subclass of retail workers were awarded $2,000,000 in damages against defendant Apple Inc. (Apple) for violations of certain California wage-and-hour labor laws. The trial court memorialized this award in its September 2017 judgment, noting that costs would be determined at a later time.

Shortly after entry of the judgment plaintiffs filed a memorandum of costs, and several months later moved for attorney's fees under Code of Civil Procedure section 1021.5.[1] Apple opposed the award of attorney's fees and filed a motion to tax costs. In March 2018, the court granted the attorney's fee motion, awarding over $2,000,000 to class counsel. A month later it partially granted Apple's motion to tax costs, reducing the recoverable amount to about $440,000. These amounts for costs and attorney's fees were ultimately included in the judgment, but the court did not specify when interest on that portion of the judgment would start.

Both parties appealed. But after participating in this court's settlement program, they eventually came to an agreement that dismissed

---

[1] Unless otherwise indicated, further undesignated statutory references are to the Code of Civil Procedure.

their respective appeals.  The matter was remanded to the trial court for "further proceedings on a distribution plan and appropriate notice."

The trial court initially encouraged the parties to work together to determine the details of distribution, but an insurmountable controversy developed regarding the date on which interest for the attorney's fees and costs awarded to plaintiffs should begin to accrue.  Apple maintained that interest should only begin when the amounts were made certain—March 2018 for the fees and April 2018 for the costs—whereas plaintiffs argued both should run from the date the judgment was entered, in September 2017.[2] The court ultimately adopted Apple's position, entering an order that stated the interest would begin accruing on the dates the respective awards were quantified.  In this appeal, plaintiffs ask us to find they are entitled to collect interest on fees and costs beginning on the date of the judgment, in September 2017.

---

[2]     Apple argues that plaintiffs waived their right to raise this argument by dismissing their first appeal and agreeing to the settlement terms, and because they earlier suggested interest should run from the date of the jury verdict rather than the subsequent judgment.  But the record clearly shows that prior to the settlement of the initial appeals and subsequent remand, the trial court never decided when postjudgment interest on costs and fees should begin to accrue.  Thus, plaintiffs' agreement to dismiss their appeal as part of the settlement could not possibly waive their right to challenge a trial court ruling that had not yet been made.  *Bell v. Farmers Ins. Exchange* (2006) 135 Cal.App.4th 1138, relied on by Apple, is inapposite because in that case the issue of the proper interest rate *was* decided prior to the first appeal.  Nor did the fact that plaintiffs' counsel proposed in May 2018 that interest run from the date of the verdict somehow preclude plaintiffs from contending in 2019— when the issue was properly presented to the trial court—that it should run from the date of the judgment.

DISCUSSION

Plaintiffs assert it is black letter law in California that fees and costs—although typically quantified at a later time—retroactively become a part of the judgment that follows a jury or bench trial, with interest accruing from the date the judgment is entered. In support of their position they rely primarily on *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125 (*Lucky*) and its progeny. Apple presses us to reject *Lucky*, arguing in large part that it erroneously interprets certain statutes governing postjudgment costs. As we will explain, the question is not as simple as whether we agree or disagree with *Lucky*. Indeed, the *Lucky* case does not even reach all aspects of the issue before us.

By statute in California, interest on a money judgment begins to accrue on the date the judgment is entered. But the precise meaning of "money judgment" in the context of a postjudgment award of costs and attorney's fees is not specifically addressed. Our reading of the relevant statutes, supported by federal caselaw addressing an analogous issue, suggests that independent monetary components of a judgment may constitute separate "money judgments" for the purpose of calculating postjudgment interest. In the case of prevailing parties seeking costs and/or fees, we ultimately conclude that interest begins to run on the date their right to those items is determined, even if the exact amount is ascertained at a later time.

A.     Lucky *and the Nunc Pro Tunc Power of the Court*

We begin with an overview of *Lucky*. Although the conflict between the parties in that case started as a contract dispute, it led to a malicious prosecution claim and an ensuing anti-SLAPP motion. (§ 425.16.) After Lee, the original plaintiff's attorney, prevailed in his special motion to strike Lucky's malicious prosecution claim, he sought related attorney's fees and

costs under section 425.16, subdivision (c). When the trial court denied him certain fees and costs and found Lucky had satisfied an order by tendering payment without any interest, Lee appealed. (*Lucky, supra,* 185 Cal.App.4th at pp. 130–136.)

We agree with the *Lucky* court that understanding "what exactly constitutes [a] judgment" is critical (*Lucky, supra,* 185 Cal.App.4th at p. 136), even if we do not accept *Lucky*'s implicit conclusion that the term has a fixed meaning in all contexts and for all purposes. Referencing various sections of the Enforcement of Judgments Law (§ 680.010 et seq.),[3] the *Lucky* opinion notes that "[t]he principal amount of a judgment is the amount of any damages awarded, plus any costs (including attorney fees) to which the prevailing party may be entitled, less any amounts paid by the judgment debtor. (§ 680.300.)" (*Lucky,* at p. 137.) Citing to section 685.010, it goes on to observe that "[p]ostjudgment interest accrues on the principal amount of the judgment at the rate of ten percent per annum." (*Lucky,* at p. 137.) *Lucky* ultimately concludes that "interest ordinarily begins to accrue on the prejudgment cost and attorney fees portion of the judgment as of the same time it begins to accrue on all other monetary portions of the judgment—upon entry of judgment." (*Id.* at p. 138.)

Apple attacks the specifics of the *Lucky* opinion's reasoning in support of its conclusion, in particular, its reference to section 680.300. As Apple correctly points out, the costs that section 680.300 mentions as being "added

___

[3]    This law was proposed by the California Law Revision Commission and enacted in the early 1980's. (Stats. 1982, ch. 1364, § 2, p. 5070.) It modified and consolidated the Code of Civil Procedure provisions with respect to the subject for which it is appropriately named. (See *Ehret v. Congoleum Corp.* (2001) 87 Cal.App.4th 202, 206; Recommendation: Interest Rate on Judgments (Jan. 1980) 15 Cal. Law Revision Com. Rep. (1980) p. 7.)

to the judgment pursuant to Section 685.090" are not the allowable *prejudgment* costs and attorney's fees at issue in this case. (See § 1033.5.) Rather, the "costs pursuant to this chapter" identified in subdivision (a) of section 685.090 are the costs *incurred postjudgment* to enforce the judgment. Neither section 680.300 nor section 685.090 address whether or to what extent prejudgment costs under section 1033.5 become part of the judgment.

On the other hand, the *Lucky* court's citation to section 680.300, even if off point, does not necessarily invalidate its conclusion that an award of prejudgment costs and/or attorney's fees becomes part of the judgment, at least for some purposes.[4] Indeed, it would appear self-evident that if *post*judgment costs of enforcing the judgment are added to the judgment, then certainly *pre*judgment costs pursuant to section 1033.5 would be similarly treated. This logic seems to be confirmed by California Rules of Court, rule 3.1700(b)(4),[5] which provides that once allowable costs have been determined, " 'the clerk must immediately enter the costs on the judgment.' " (See, e.g., *Chodos v. Borman* (2015) 239 Cal.App.4th 707, 714 (*Chodos*); 9 Witkin & Epstein, Cal. Procedure (5th ed. 2008) Judgments, § 147.)

That the clerk enters the costs "on the judgment" strongly implies that the amount of the cost award becomes part of the judgment, at least to some extent. But it does not necessarily dictate *when* interest on that part of the judgment begins to accrue. Plaintiffs argue that it does. They rely on section 685.020, which provides that interest begins to accrue on a money judgment on the date the judgment was entered. (§ 685.020.) From plaintiffs' perspective, there was only one judgment, entered in September 2017, and

---

[4] Attorney's fees authorized by contract, statute, or law are allowable as costs. (§ 1033.5, subd. (a)(10).)

[5] Further rule references shall be to the California Rules of Court.

the later-determined costs and fees accrue interest from that date because they were "legally and physically" integrated into it when the court directed the clerk to "add the fees and costs awards in handwriting" on the September judgment.

In support of this argument, they cite (among other authorities) *Bankes v. Lucas* (1992) 9 Cal.App.4th 365 (*Bankes*) and *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993 (*Grant*). *Bankes* explicitly treats the clerk's entry of a costs order as a nunc pro tunc correction of the judgment, stating, "Generally, when a judgment includes an award of costs and fees, the amount of the award is left blank for future determination." (*Bankes,* at p. 369.) "When the court's subsequent order setting the final amount is filed, the clerk enters the amounts on the judgment nunc pro tunc." (*Ibid.*) *Grant* makes a similar pronouncement, citing to the rule of court that preceded rule 3.1700(b)(4). (*Grant,* at pp. 996–997.)

But rule 3.1700(b)(4) simply states that "[a]fter the time has passed for a motion to strike or tax costs or for determination of that motion, the clerk must immediately enter the costs on the judgment." We do not read this rule as establishing that court clerks wield a formal nunc pro tunc power when they add costs to the judgment. More importantly, perhaps, our Supreme Court's description of the proper use of the nunc pro tunc power is limited to two scenarios: (1) to correct mistakes in order to bring the judgment into alignment with the court's intention at the time, and (2) "to preserve substantial rights" when justice requires, particularly when a litigant would be otherwise prejudiced by an act within the court's control and/or not attributable to the parties. (*Osmont v. All Persons* (1913) 165 Cal. 587, 591; *Mather v. Mather* (1943) 22 Cal.2d 713, 719; see also *Fox v. Hale & Norcross Silver Mining Co* (1895) 108 Cal. 478, 480–481 (*Fox*); but see *Estate of*

7

*Eckstrom* (1960) 54 Cal.2d 540, 544 (*Eckstrom*) [omitting the second justification: "The function of a nunc pro tunc order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made."].)[6] Even assuming both grounds for exercising the nunc pro tunc power are still permissible, neither would apply to entering newly determined costs onto a previous judgment. Such an action is not a correction of a mistake. Neither does the routine business of litigating entitlement and amount of fees or costs fall into the very limited second category.[7] So although the clerk regularly adds awards of fees and costs onto an earlier judgment so that a single sum can be subject to collection, this clerical action cannot broaden the court's nunc pro tunc power beyond proper bounds. Nor does it transform that judgment into a single, immutable document for all purposes, and specifically for the purpose of determining when interest should begin to accrue.

Returning to plaintiffs' reliance on *Lucky*, we read its pronouncement that interest "ordinarily" begins on the date of judgment to recognize there is no single absolute rule for every situation. (*Lucky, supra*, 185 Cal.App.4th at

[6]     More recent appellate cases follow the pronouncement in *Eckstrom, supra*, 54 Cal.2d 540, and treat the nunc pro tunc power as limited to correcting an error in the judgment. (See *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890–891 ["the court may not, under the guise of an amendment of its records, revise or change the judgment in substance and have such amended judgment entered nunc pro tunc"]; 9 Witkin & Epstein, Cal. Procedure (5th ed. 2020) Judgments, § 61.)

[7]     This second reason to use the nunc pro tunc power was historically applied in extraordinary circumstances, such as a party's death. (See, e.g., *Fox, supra,* 108 Cal. at pp. 480–482.)

p. 138.)  *Lucky* applied this ordinary principle in a context where the prevailing plaintiff's entitlement to attorney's fees under section 425.16 was clear.  But the case before us is different, at least with respect to attorney's fees, in that we are asked to address what standard governs when it is *unclear* at the time of judgment that the prevailing party will recover *any* fees.  (§ 1021.5.)  As such, *Lucky*'s utility in this case is limited, and we find little guidance in its progeny (which plaintiffs also cite) on this point.  (See *In re Marriage of Dalgleish & Selvaggio* (2017) 17 Cal.App.5th 1172, 1177–1182 (*Dalgleish & Selvaggio*) [in a marital dissolution case, interest on a payment owed to one party began accruing on the date of the judgment making that right certain]; *Hernandez v. Siegel* (2014) 230 Cal.App.4th 165, 171–172 [citing *Lucky* for general purposes in determining whether interest on attorney's fees belong to counsel or the client]; *Chodos, supra,* 239 Cal.App.4th at pp. 710–714 [considering whether interest on attorney's fees runs from the date of the judgment awarding fees or remittitur after the appellate court reduced the amount].)  Nonetheless, we follow *Lucky*'s example in looking to the governing statutes as our starting point, recognizing that determining the date interest begins to accrue on costs or fees included in the judgment is a question of law for de novo review. (*Dalgleish & Selvaggio,* at pp. 1177–1178.)

B.  *The Enforcement of Judgments Law Is Properly Construed as Starting the Accrual of Postjudgment Interest on the Date the Court Decides a Party Is Entitled to Payment of Costs and Attorney's Fees, Even if the Exact Amount Remains to Be Determined*

As we have already noted, the Enforcement of Judgments law provides that interest begins to accrue on a money judgment on the date that "judgment" was entered.  (§ 685.020.)  A "money judgment" is, in turn, defined as "that part of a judgment that requires the payment of money."

(§ 680.270.)  But what if a judgment includes separate component parts with separate orders entered at different times requiring the payment of different sums of money?  Can the separate orders amount to separate "money judgments" that begin to accrue interest at different times?

Consistent with the Enforcement of Judgments Law, an order can constitute a money judgment.  (§ 680.230; see, e.g., *In re Marriage of Farner* (1989) 216 Cal.App.3d 1370, 1375–1376 [finding an order directing spouse to pay a certain percentage of monthly benefits to his former wife was a "money judgment" within the meaning of § 680.270].)  Indeed, the Supreme Court has explained that cost awards "are, in fact, separate and complete judgments in themselves."  (*Stockton Theatres, Inc. v. Palermo, 55* (1961) 55 Cal.2d 439, 443.)  So when the court must still determine *if* one side should pay certain expenses of their opponent, there is no money judgment as to those expenses unless and until the court decides they are recoverable.  There may already be a money judgment with respect to other monetary payments the court has ordered, but that judgment cannot constitute a money judgment for costs that a party has yet to demonstrate it is entitled to recover.  This is because there is no cogent way to construe the term "money judgment" as defined to mean a judgment that occurred before the right to certain costs was established.  But neither should it be construed to mean a judgment that states a sum certain dollar amount owed.  Rather, a judgment that "requires the payment of money" in general terms will suffice.  (§ 680.270.)  Under California law, then, any judgment that establishes one party owes the other payment is a money judgment for the purposes of section 685.020, even if the precise amount owed has yet to be determined.

In this case, when judgment was entered in September 2017, it established plaintiffs' right to certain costs as the prevailing parties in the

10

action. (See § 1033.5, subd. (a).) That judgment was therefore a money judgment for these costs because it required Apple to pay them, even if the exact amount remained to be determined. Interest on those amounts began to accrue immediately upon entry of the judgment.

At the same time, the September 2017 judgment did not include attorney's fees. Although attorney's fees are an element of costs included in section 1033.5, they are awardable only "when authorized" by contract, statute or law. (§ 1033.5, subd. (a)(10).) Plaintiffs sought attorney's fees under section 1021.5, the "private attorney general" doctrine, which permits prevailing plaintiffs to recover fees only if they establish several additional elements beyond the fact that they prevailed. (See generally *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 935–942 [discussing the first two statutory factors]; *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214–1226 [analyzing third factor].) Thus, it was not until March 2018 when the court decided plaintiffs' motion for attorney's fees that their right to collect those fees was established. Accordingly, the order on attorney's fees constitutes a separate money judgment and interest on that judgment began to accrue on that later date.[8]

We find significant support for our conclusion in certain federal court decisions that are part of a decades-old controversy regarding the accrual date for postjudgment interest under federal law, a debate often framed as a choice between two different "judgments." As in California, interest on costs and fees in federal cases is governed by statute. Similar to Code of Civil

_____

[8] In this case, plaintiffs' entitlement to attorney's fees and the amount of those fees was decided in the same order. If for some reason the trial court had first decided entitlement, and then conducted further proceedings to determine the amount, interest would begin to accrue as soon as entitlement was established.

11

Procedure section 685.010, title 28 of the United States Code section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case . . . [to] be calculated from the date of the entry of the judgment." But an ambiguity arises from the federal statute's use of the phrase "entry of the judgment," which could describe either the "merits judgment" that determines one party's right to recover, or the judgment(s) that set the precise amount owed—what has been termed the "exact quantum judgment." (See Kemphaus & Bales, *Interest Accrual on Attorney's Fee Awards* (2004) 23 Rev. Litig. 115, 116.) This debate has been compounded by the federal statute's failure to define the term "money judgment," and a resulting split in authority as to whether a money judgment must include the precise amount recoverable. (See *Eaves v. County of Cape May* (3d Cir. 2001) 239 F.3d 527, 530–542 (*Eaves*).)

The Fifth Circuit's opinion in *Copper Liquor, Inc. v. Adolph Coors Co.* (5th Cir. 1983) 701 F.2d 542 (*Copper Liquor*) established what would become the majority view when it explained that interest should run from the time a party's *entitlement* to costs or fees was made certain:

> "The relevant judgment for purposes of determining when interest begins to run is the judgment establishing the right to fees or costs, as the case may be. If costs are allowed without express mention in the judgment . . . the date of the judgment starts the accrual of interest on the costs due. If, as in the usual course, the amount of costs is later determined by the clerk, interest will nonetheless run from the date of the judgment allowing costs either expressly or by legal implication. If a judgment is rendered that does not mention the right to attorneys' fees, and the prevailing party is unconditionally entitled to such fees by statutory right, interest will accrue from the date of judgment. If, however, judgment is rendered without mention of attorneys' fees, and the allowance of fees is within the discretion of the court, interest will accrue only

12

from the date the court recognizes the right to such fees in a judgment." (*Id.* at pp. 544–545.)

*Copper Liquor* has been followed on this point by most of the circuit courts in a line of cases that reflect a robust debate on the policy implications of choosing the merits judgment over the exact quantum judgment. (Compare *Jenkins v. Missouri* (8th Cir. 1991) 931 F.2d 1273, 1275–1277, *Friend v. Kolodzieczak* (9th Cir. 1995) 72 F.3d 1386, 1391–1392, *BankAtlantic v. Blythe Eastman Paine Webber, Inc.* (11th Cir. 1994) 12 F.3d 1045, 1052– 1053, *Cleo D. Mathis & Vico Prods. Mfg.* (Fed. Cir. 1988) 857 F.2d 749, 759– 760, and *Associated General Contractors of Ohio, Inc. v. Drabik* (6th Cir. 2001) 250 F.3d 482, 485–495 with *Eaves, supra,* 239 F.3d at pp. 529–542, *MidAmerica Federal Sav. & Loan Ass'n v. Shearson/American Exp., Inc.* (10th Cir. 1992) 962 F.2d 1470, 1475–1477, and *Fleming v. County of Kane* (7th Cir. 1990) 898 F.2d 553, 565.)

Ultimately, we align our construction of the Enforcement of Judgments Law with the *Copper Liquor* approach, accepting the arguments of both parties in part based on the statutory language and its underlying purpose. We reject plaintiffs' position as to their attorney's fee award because it would require us to conclude that a judgment entered before they were necessarily entitled to recover fees was somehow a money judgment for those fees. But because a "judgment [for] the payment of money" (§ 680.020) with respect to costs and attorney's fees does not exist until the right to some monetary payment is established, the plain language of the statute does not support plaintiffs' position. We reject Apple's position as to the remaining costs because consistency with our construction as to fees mandates that interest on the award of plaintiffs' routine litigation costs began to accrue when their *entitlement* to costs was certain, i.e., when a merits judgment was entered in their favor.

13

Our conclusion is further supported by the underlying reasons for awarding postjudgment interest, which are to "compensate[] the judgment creditor for the loss of use of the money until the judgment is paid and [to act] as an incentive for the judgment debtor to pay the judgment promptly." (Recommendation: Interest Rate on Judgments, *supra,* 15 Cal. Law Revision Com. Rep. (1980) at p. 11; accord Payor, *Post-Judgment Interest in Federal Courts* (1988) 37 Emory L.J. 495 ["Post-judgment interest compensates a 'wronged' party for the loss of use of money awarded by a final judgment."].) Prevailing parties lose use of "their" funds as soon as their entitlement to those funds is established. Accordingly, interest begins accruing as soon as a money judgment establishing a party's entitlement to recover funds is entered. Waiting until the amount is certain would only create incentives for the judgment debtor to delay the final accounting.[9]

---

[9] We decline Apple's invitation to debate the advisability of the Legislature's decision to set a certain "legal rate" of interest rather than indexing it to market rates. Those policy arguments are appropriately made to the Legislature and not the courts

## DISPOSITION

The trial court's December 2019 order is reversed only insofar as it orders postjudgment interest on costs to be calculated from April 9, 2018. We remand with instructions to enter an order awarding plaintiffs interest on costs calculated from September 13, 2017. In all other respects, the order is affirmed. Parties shall bear their own costs on appeal.


DATO, J.

WE CONCUR:


HALLER, Acting P. J.


O'ROURKE, J.

15