[No. 2,805.]

CHARLES J. KING, JAMES F. CROSETT, AND SAMUEL FOSTER *v.* B. J. WISE.

CONTRACT ESTABLISHING TRUST RELATION.—If one party agrees to unite with two others in the purchase of land, each to furnish one third the purchase money, and such party to conduct the negotiations, and buy the land for the least possible price, he assumes a position of trust towards his associates, and is bound to exercise the utmost good faith towards them, and share with them all the profits of the bargain.

FRAUD OF ONE JOINT PURCHASER OF LAND TOWARDS HIS ASSOCIATES.—
If A. agrees to unite with B. and C. in the joint purchase of a tract of
land, each to furnish one third the price, and A. to conduct the negotiations,
and buy the land at the least possible price, and A. represents to them that
the land costs six hundred and fifty dollars per acre, when it only costs
five hundred dollars per acre, and a purchase is made at the former sum,
and A. pockets the difference between the two prices, B. and C. are entitled
to recover from A. the full sum they paid beyond what they would have
paid at five hundred dollars per acre.

IDEM.—Before bringing an action to recover such difference, B. and C. need
not offer to rescind the contract of purchase, and an affirmance of the con-
tract by them, after they discover the fraud practised on them by A., does
not destroy their right of action for the damage sustained.

RECOUPMENT OF DAMAGES.—A claim of A. and B. to recoup damages from
C., by way of set-off against the promissory note of A., B., and D., held
by C., cannot be sustained, nor can such claim for damages be set off
against an aliquot part of the sum due on the note.

APPEAL from the District Court of the Twelfth Judicial
District, City and County of San Francisco.

On the 23d of March, 1869, the defendant proposed to
plaintiffs Crosett and King to unite with them in the pur-
chase of a tract of thirty-six acres of land, in Alameda
County. They agreed to unite with him in the purchase,
and each was to furnish one third of the purchase money,
and the defendant was to conduct the negotiations, and buy
the land at the least price for which it could be purchased.
Defendant represented to Crosett and King that J. Hardy
owned the land, and that it could not be purchased for less
than six hundred and fifty dollars per acre, and that the
terms of purchase were five hundred dollars down and six
thousand dollars in ten days, and the balance in periodical
installments of about two thousand dollars each. On the
same day Crosett and King paid defendant three hundred
and thirty-three and thirty-three one hundredths dollars,
being two thirds of the five hundred dollars. One Tyler
was the real owner of the land, and Hardy had no interest
in the matter, but acted as defendant's agent and trustee;
and defendant, on the said twenty-third of March, gave

Hardy the five hundred dollars, who, on the same day, paid it to Tyler, and took from Tyler a contract to sell the land at five hundred dollars per acre, payable in periodical installments, of which the first was three thousand dollars, payable ten days thereafter. Four days thereafter defendant, without consultation with · Crosett or King, sold his interest in the transaction to plaintiff Foster.

The suit was first commenced in the name of Crosett and King, but Foster was, afterwards, by consent, made a joint plaintiff.

On the third day of April thereafter Crosett, King, and Foster, by direction of defendant, executed with Hardy a contract for the purchase of the land, at six hundred and fifty dollars per acre, and paid him four thousand dollars as an installment of the purchase money, being two thirds of six thousand dollars; and Wise and Foster also paid Hardy two thousand dollars, on the same account, and Hardy paid one half, to wit, three thousand dollars, to Tyler, and took from Tyler a contract for the purchase of the land at five hundred dollars per acre, payable thereafter in installments, and paid the remaining three thousand dollars to defendant. On the thirty-first of May thereafter, Hardy assigned to Crosett, King, and Foster, his contract with Tyler, and Crosett, King, and Foster, jointly, assumed to pay the obligations of Hardy to Tyler. At the same time, Crosett, King, and Foster executed to Hardy four promissory notes for the aggregate sum of two thousand four hundred dollars, payable on the respective days of August 3d and December 3d, 1869, and the 3d day of April and 3d day of August, 1870. The notes were intended to represent the unpaid difference between the price Hardy agreed to pay Tyler for the land and that which the plaintiffs agreed to pay Hardy. The plaintiffs knew when they made the notes that they were for the benefit of Wise, and that Wise would receive the money paid on them. Hardy immediately assigned the notes to the

defendant Wise.   When Crosett & King executed the con-
tract for the purchase of the land, and paid the money to
Hardy, they were ignorant of the fraud Wise was practicing
on them.   When this action was commenced, the plaintiffs
had not returned the land to either Hardy or defendant, or
offered to rescind the contract of purchase.   Foster was cog-
nizant of all of Wise's acts, and was not deceived.

The complaint set out the above facts, and asked for judg-
ment for the damages the plaintiffs had sustained by the
deceit practiced on them by Wise, and that the plaintiffs
might recoup and set off, against the promissory notes, the
amount of the judgment they might recover, to the extent
of the face of the notes, and that the defendant be com-
pelled to surrender the promissory notes to be canceled.
The defendant was insolvent.

The defendant had judgment in the Court below, and the
plaintiffs, King and Crosett, appealed.

*Gray & Haven*, for Appellants.

The plaintiffs had the right to affirm the contract, even
after the discovery of the fraud, and to recover damages
for the tort; or they could have rescinded the contract and
recovered back the money they had paid. (*Dorr* v.
*Fisher*, 1 Cush. 274; *Kimball* v. *Cunningham*, 4 Mass. 505;
*Heastings* v. *M'Gee*, Supreme Court, Penn., Pacific Law
Reporter, Vol. 1, No. 10; *Whitney* v. *Allaire*, 4 Denio R. 557;
*Earl* v. *Bull*, 15 Cal. 421; *Whitney* v. *Allaire*, 1 New York
R. 312; Sedgwick on Damages, 4th ed., 296; *Lawrence* v.
*Montgomery*, 37 Cal. 183; 2 Kent's Com. 480, Note a; *Boor-
man* v. *Johnston*, 12 Wend. R. 556; *Waring* v. *Mason*, 18
Wend. R. 425; *Morgan* v. *Skidmore*, 55 Barb. S. C. R. 263;
*Short* v. *Stevenson*, 63 Penn. R.; Am. Law Reg., Vol. 19, p.
67; *Allaire* v. *Whitney*, 1 Hill, 484; *Ahrens* v. *Adler*, 33
Cal. 616.)

The defendant has received two thirds of five thousand

four hundred dollars—*i. e.,* three thousand six hundred dollars, being one hundred dollars per acre on thirty-six acres, in violation of the trust reposed in him by King and Crosett, which trust he accepted, and hence the plaintiffs are to recover that sum from him. (Dunlap's Paley on Agency, pp. 33, 34, 36; *Fawcett* v. *Whitehouse,* 1 Russell and Mylne, 132; *Alvarez* v. *Brannan,* 7 Cal. 503; *Rea* v. *Suryhne,* 39 Cal. 579; 1 Hilliard on Torts, 6.)

The measure of damages which plaintiff is entitled to recover, is the difference between the price of the land purchased by the defendant and the price paid by the plaintiff—*i. e.,* three thousand six hundred dollars. (Sedgwick on Damages, 4th ed., pp. 559, 560; *Van Epps* v. *Harrison,* 5 Hill, N. Y. 63; *Monell* v. *Coldon,* 13 Johns. N. Y. 395; *Short* v. *Stevenson,* supra.)

The notes being a portion of the fruits of the fraud, and the defendant being insolvent, the plaintiffs have a right to have them canceled, on the ground that if defendant should bring suit on the notes plaintiffs could recoup in that suit the amount of any judgment which they are entitled to recover for the tort alleged, to the extent of the value of the notes. Such is the prayer of plaintiffs' complaint. To support the last proposition, we cite: *Van Epps* v. *Harrison,* 5 Hill R. 65; Waterman on Recoupment, Secs. 416, 422–428; California Practice Act, Sec. 47; *Earl* v. *Bull,* 15 Cal. 421; *Dennis* v. *Belt,* 30 Cal. 252; Sedgwick on Damages, 4th ed., p. 560.

*J. M. Seawell,* for Respondent.

The assertion by the defendant, that the land cost six hundred and fifty dollars per acre, is not actionable. The most that could be claimed is that it was an assertion that the land was worth six hundred and fifty dollars per acre.

The complaint does not state that the land was not worth that sum. (*Sandford* v. *Hardy,* 23 Wend. 269; *Taylor* v.

*Fleet,* 4 Wend. R. 103; *G. L. R. R. Co.* v. *Magnay,* 25 Beav. 595.)

The measure of damages in an action for deceit is the difference between the real and represented values of the property sold. (Sedgwick on Measure of Damages, 5th ed., 655; id. 2d ed., 559; *Whitney* v. *Alain,* 1 Comstock's R. 312; *Stiles* v. *White,* 11 Metcalf's R. 356; *Carr* v. *Moore,* 41 N. H. R. 131; *Page* v. *Parker,* 40 N. H. R. 47; *Bamly* v. *Alexander,* 19 Iowa R. 162; *Gates* v. *Reynolds,* 13 Iowa R. 1; *Hahn* v. *Cumings,* 3 Iowa R. 583; *Cary* v. *Grumans,* 4 Hill, 627; *Sherwood* v. *Sutton,* 5 Mason's R. 1; *Lamson* v. *Marin,* 8 Barb. R. 9; *Jones* v. *Bartlett,* 1 Term R. 136.)

The plaintiffs, at the time of acquiring from Hardy the contract for the land and executing the notes, had full knowledge of the facts constituting the alleged fraud. Neither have they offered to restore the consideration. (1 Story's Equity Jurisprudence, Sec. 203 a; *Irwin* v. *Kirkpatrick,* 3 Eng. Law and Eq. R. 37; *Bronson* v. *Willis,* 4 Selden's R. 182; 2 Parsons on Contracts, 277, 279; *Saratoga and Schenectady R. R. Co.* v. *Rose,* 24 Wend. 25; *Parsons* v. *Hughes,* 9 Paige's R. 594.)

By the Court, NILES, J.:

By the terms of the original agreement between the defendant and the plaintiffs, Crosett and King, the defendant was to purchase the land for the least price for which it could be purchased, and for the benefit of the three parties concerned.

By this agreement the defendant assumed a position of trust, and in that relation was bound to exercise the utmost good faith towards his associates in the transaction. It is one of the plainest principles of equity that an agent cannot make a profit out of his principal in the business of his

agency. The defendant, as associate of the plaintiffs in the proposed purchase, and entrusted by them with its management, was held to the same good faith, and could make no bargain, the benefits of which his co-associates would not be entitled to share. It is not mentioned whether the price which the defendant induced the plaintiffs to pay was more or less than the value of the property purchased. The plaintiffs were entitled to share the profits of a good bargain, as they would have been bound to share the losses of a bad one.

It is claimed by the defendant that the failure of the plaintiffs to offer a rescission of the contract and a restoration of the land, and their affirmance of the contract after the discovery of the fraud, was a bar to their recovery in this action.

The rule, which requires a rescission of the contract upon the discovery of fraud, has no application to this case. The contest is not between a vendor, who has made fraudulent misrepresentations in regard to the property sold, and the vendee, who has been misled and injured by the fraud. The plaintiffs may have been willing to purchase the land at the price they paid, or at even a larger price, and may not wish to rescind the sale; but they are none the less entitled to hold the defendant to a strict observance of the trust confided to him, and to enjoy their proportionate benefit of any bargain he may have made. They do not complain that they were induced to pay more than the land was worth, but that they would have paid less if the defendant had been faithful to his trust. By their affirmance of the contract, after knowledge of the fraud, they lost any right they may have had to rescind the sale and recover back the purchase money; but it was not a release of their right of action against the defendant for damages resulting from his fraudulent acts. We are of the opinion that the plaintiffs should have judgment upon the facts as found by the Court.

It is not difficult to arrive at the exact measure of damages which plaintiffs are entitled to recover. The actual value of the land is not an element in the estimate. The plaintiffs should have, from the defendant, the difference between the price of the land purchased by him for the plaintiffs and the amount paid by the plaintiffs.

The claim of the plaintiffs, Crosett and King, to set off the amount of the judgment in this action against the promissory note held by the defendant, cannot be sustained. These were joint notes of the plaintiffs, Crosett, King, and Foster. It is well settled that joint and separate debts cannot be set off against each other at law, and I can see no good reason for the application of a different rule to a claim for damages which is the subject of recoupment. Nor do sufficient facts appear to call for the equitable interposition of the Court. If the liabilities were in reality mutual, as if Foster were a merely nominal party to the notes or surety upon them, the insolvency of the defendant might be a ground for equitable relief. But Foster is a bona fide debtor of the defendant upon the notes, and we do not see upon what recognized principle we can apportion to the plaintiffs, Crosett and King, by way of recoupment, an aliquot part of the joint indebtedness.

Judgment reversed, with instructions to the Court below to render judgment for the plaintiffs, Crosett and King, in accordance with this opinion.