[Civ. No. 855. Fourth Appellate District.—August 19, 1931.]

OLIN M. TUFTS, Respondent, v. HUGH L. MANN, Appellant.

John J. Wilson and M. M. Holman for Appellant.

Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Respondent.

FINNEY, J., *pro tem.*—This is an action to recover a secret profit realized and retained by the defendant from a sale of real property negotiated by himself and the plaintiff. From a judgment in favor of the plaintiff the defendant takes this appeal.

It is the theory of the plaintiff that he and the defendant were engaged in a joint adventure in negotiating the sale of certain real property which he held under option, which sale resulted in the profits retained by the defendant and that he, the plaintiff, is entitled to recover one-half of such profits. Briefly the facts are these, as found by the court:

In the month of August, 1926, and during all the times in question, the plaintiff and defendant were licensed real estate salesmen, engaged in the real estate brokerage business and associated in the office of W. M. Garland & Co.,

in buying and selling real estate as salesmen; that on or about August 13, 1926, the plaintiff and defendant entered into an agreement to work together in handling and selling certain real property belonging to one Macklin and commonly known as the Fedora Hotel, Los Angeles; that it was agreed between them that the plaintiff would obtain an option in writing from said Macklin to purchase said property for the sum of $50,000 net to the seller, and that they would work together to procure a purchaser for the property during the life of the option, at a price in excess of the amount to be paid to said Macklin and that they would share alike in whatever proceeds arose from the sale of the property over and above the price to be paid Macklin, and any amount necessary to be paid to W. M. Garland & Company as a commission. Thereafter, on or about August 15, 1926, the plaintiff obtained, in the name of his aunt, an exclusive thirty-day option, in writing, to purchase the property from Macklin for the sum of $50,000, to be paid $15,000 in cash, on delivery of deed and certificate of title and $35,000 on time, to be evidenced by a note secured by deed of trust on said property. Thereafter, on or about September 13, 1926, the defendant reported to plaintiff that he had procured a *bona fide* purchaser for said property, to wit, one Evelyn Davies, who would be willing to pay therefor the sum of $50,000, and the further sum of $1250 to apply on a brokerage commission, the seller to pay the balance of said commission, to wit, $1250, thus making a brokerage commission of $2,500 on the sale. Believing these representations to be true, the plaintiff was thereby induced to and did exercise his option to purchase the property and the deal for the same was closed on the basis of this offer, during the life of the option, and J. H. Macklin, the owner of the property, delivered his deed therefor to the purchaser, Evelyn Davies. Thereupon the plaintiff and defendant divided the ostensible profit or commission so made on the transaction, to wit, the sum of $2,500, each receiving one-half the balance thereof after paying $833.33 to W. M. Garland & Company.

The court further finds that shortly thereafter the plaintiff discovered that Evelyn Davies was not the *bona fide* purchaser of said property, but was in fact acting as a dummy for the defendant and one M. E. Hutton, Jr., in

the purchase of said property, and that one-half of the money paid for the purchase of said property, including the ostensible profit or commission aforesaid, belonged to the defendant and was actually paid by him; that thereafter the property was sold in such a way that the defendant realized for himself a profit of $6,729.20 and secured a one-half beneficial interest in certain real property, commonly known as 422 South Alexandria Avenue, Los Angeles, the title thereto being held by the Title Insurance & Trust Co., as legal owners, for the benefit of the defendant as to such interest. Thereafter, and on May 11, 1927, this suit was begun to recover one-half of said profits and beneficial interest and resulted in a judgment accordingly in favor of the plaintiff.

Appellant urges numerous reasons for a reversal of the judgment in this case, but all of such reasons relate to three principal objections which will be discussed in their order.

First, appellant contends that the evidence fails to support finding number II which, in effect, finds that the appellant and respondent entered into a joint adventure whereby they agreed, each with the other, to work together in securing an option from J. H. Macklin on the property commonly known as the Fedora Hotel in Los Angeles, for the sum of $50,000, and in selling the same to a purchaser who would buy the property at a price in excess of the net price to be paid the seller, and that they would share alike in whatever proceeds arose from the sale of the property over and above the price to be paid the seller therefor and any amount necessary to be paid W. M. Garland & Company. Appellant further contends that the evidence fails to show any relationship between appellant and respondent except that of coemployees engaged in business as real estate salesmen in the office of W. M. Garland & Company at the time the sale in question was negotiated and consummated.

We think this objection is not well founded. The finding is made upon conflicting evidence in which the respondent testified in substance that he first talked to Mann about the Macklin properties about August 1, 1926, in the Garland office; that Macklin was willing to give him the exclusive right to sell his property and he suggested that Mann make a trip around to look over the properties of which Macklin

had given him a list; that after making the trip and examining the property Mann suggested that respondent "get an option" on two or three of the best properties and, following that suggestion, on August 13, 1926, respondent secured an option on the Fedora Hotel. Respondent further testified, in the language of the bill of exceptions: "I was working on the basis that I had an option on this property and if he would produce a buyer I would split with him the profit over the option price, after we had satisfied the office with half the Realty Board commission; Mann and I had several conversations; the first occurred about a week after the option was obtained, about August 20th; Mann and I were by ourselves in the Garland office and I said, 'I have the option on the Fedora signed up' and showed him the option, and I said 'Now, if you will assist me in getting a buyer, I will split the profits with you on this particular deal'; he said that would be satisfactory; I couldn't quote his exact words; he told me he considered that a very steep figure on the property and that he thought there were profitable possibilities at that figure and he would be perfectly willing to go out and work on it on that basis and cooperate with me." Later, "I said to Mann, 'I want to be positive that you are actually selling this property because if you are not actually selling it, I want to turn it over on this other deal that I have just been offered;' he said there was no question about his selling it; I should have faith in him; he was not attempting to keep me out of the profit in the deal; he was merely selling it as a broker and all he expected was the commission; that he had worked very hard on it at my suggestion, and so he had; that talk was had about September 13th, the day the matter went into escrow." There is other testimony in the record to the same general effect. However, it is not necessary to quote further, as it is apparent from the quotation already made, that there is evidence in the record to sustain the finding in question. A finding made by the trial court on conflicting evidence will not be disturbed if, as in this case, there is evidence to sustain the same. (*Fogg* v. *Perris Irr. Dist.*, 154 Cal. 209 [97 Pac. 316]; *Keyes* v. *Nims*, 43 Cal. App. 1 [184 Pac. 695].)

The appellant also contends, in this connection, that there is a fatal variance between the allegations of the complaint and the proof on which is based the finding that the appellant and respondent entered into a joint adventure for the purpose of handling and selling the Fedora Hotel. At the close of the plaintiff's case, a motion was made on behalf of the plaintiff to amend the complaint to conform to the evidence, but so far as the record shows, no such amendment was ever made. The objection here made is directed to parts of paragraphs I and III of the second amended complaint, which read as follows:

Paragraph I. "That the plaintiff and defendant on the 15th day of August, 1926, and at all times thereafter until a date subsequent to the 15th day of September, 1926, were engaged in the real estate business and associated in the same office in buying and selling real estate as agents and brokers,"

And Paragraph III. "That after obtaining the said option and on or about the 20th day of August, 1926, plaintiff advised defendant that he (plaintiff) had obtained the said option and was then the owner thereof and had the legal right then to buy said property within the thirty-day period of said option, at and for the purchase price of fifty thousand dollars ($50,000) net, and plaintiff thereupon offered to defendant that they, plaintiff and defendant, enter into a partnership agreement for the handling and sale of said property, plaintiff and defendant to work jointly and severally, each for the other, and as agent of the other, in the selling of said property for the best obtainable price, it being then and there agreed between them that if either obtained a *bona fide* buyer for said property at a price in excess of the option price thereof above named, and the proposed sale was approved by the other, that then and in that event plaintiff would exercise his said option and elect to buy said property and become the purchaser thereof and obligate himself to pay the said purchase price. It was then and there specially agreed that all profits received from the sale of said property, or the purchase thereof, from the said owner above named, to the amount of twenty-five hundred dollars ($2500), should be treated and disposed of as commissions

on the sale of said property, and that said commissions should be divided one-third thereof to plaintiff, one-third thereof to defendant, and one-third thereof to the owner and operator of the real estate office in which plaintiff and defendant were then operating, working and having their place of business as such licensed real estate agents and brokers. It was then and there further agreed between plaintiff and defendant that each should in all respects fully advise the other of all knowledge which either obtained, and in all respects would deal fairly with the other and would make known to the other the truth of the facts with reference to any sale of said property which might be made within the life of said option.''

It is contended by appellant that the quoted parts of the amended complaint allege a general partnership between the plaintiff and defendant as real estate agents and brokers in the handling and selling of real estate, whereas the proof purports to show only a joint adventure in a single transaction in the buying and selling of real estate, and the court has so found.

It may be doubted whether the allegations referred to constitute an allegation of a general partnership. But whether they do or not, it is clear that the evidence offered was admissible under the allegations of the amended complaint. We are satisfied that the court drew the proper conclusion therefrom, if he believed the testimony of re-respondent, in the finding that the appellant and respondent entered into a joint adventure for the purpose of handling and selling the real estate in question.

It is sometimes a difficult question whether a transaction constitutes a partnership or just a joint adventure. One of the principal distinctions between a partnership and a joint adventure lies in the fact that a partnership, ordinarily, is formed for the transaction of a general business of a particular kind, while a joint adventure relates to a single transaction of a particular kind, although it may continue for years. There are other more important distinctions, viz., a partner acts as a principal for himself and as agent for his copartners in the transaction of the partnership business, whereas, in a joint adventure, no one of the parties thereto can bind the joint adventure.

On the other hand, the resemblance between a partnership and a joint adventure is so close that the rights, as between the adventurers, are practically governed by the same rules that govern partnerships. Accordingly, a joint adventurer has a right to, and may sue for, an accounting of profits, in accordance with the agreement therefor, and the obligations growing out of the agreement between the parties are governed by the same rules of law applicable to partnerships (*Butler* v. *Union Trust Co.*, 178 Cal. 195 [172 Pac. 601]; *Keyes* v. *Nims*, 43 Cal. App. 1 [184 Pac. 695]). It is therefore immaterial, in so far as the rights and obligations of the parties herein involved are concerned, whether the relation created between the appellant and respondent is a partnership or a joint adventure, which we are inclined to believe it to be.

Second, the appellant contends that the instrument procured from Macklin by respondent and under which he claimed the right to purchase the property in question, while referred to as an option to purchase, was merely an exclusive listing or right to handle and sell the property, which gave respondent no right to purchase the same.

The original instrument executed by Macklin and delivered to respondent covering the Fedora Hotel was lost or destroyed and no copy thereof was produced at the trial or offered in evidence. The court, however, made the following finding, as No. II of its findings, to wit:

"That plaintiff, on or about the 15th day of August, 1926, obtained from one J. H. Macklin, the owner of certain property known as the Fedora Hotel, located at 325 East Second Street, Los Angeles, California, an exclusive thirty-day good and valid option to purchase said property from said J. H. Macklin for the sum of fifty thousand ($50,000.00) dollars net to said J. H. Macklin."

We have carefully examined the record and are satisfied that this finding is supported by the evidence and should not be disturbed by this court under the familiar rule above referred to. An option is an agreement by which an owner invests another with the exclusive right to buy certain property at a stipulated price, within a limited time (6 Cal. Jur., p. 48, sec. 27). It is apparent that respondent held an option and right to purchase the

property in question, and that such option was not merely a listing with authorization to sell the property as agent for the owner.

 Third, appellant contends that the judgment in this case cannot stand because neither of the parties to this action is licensed either as an individual real estate broker or as a partner or joint adventurer, to transact business as a real estate broker or real estate salesman, as required by the terms of the Real Estate Brokers' Act (Stats. 1919, p. 1252, as amended by Stats. 1921, p. 1294, Stats. 1923, p. 93, and Stats. 1925, p. 600).

The Real Estate Brokers' Act, so far as it need be referred to here, provides as follows:

"Sec. 1. It shall be unlawful for any person, copartnership or corporation to engage in the business, or act in the capacity of a real estate broker, or a real estate salesman within this state without first obtaining a license therefor.

"Sec. 2. A real estate broker within the meaning of this act is a person, copartnership or corporation who, for a compensation, sells or offers for sale, buys or offers to buy or negotiates the purchase or sale or exchange of real estate, . . . for others as a whole or partial vocation.

"A real estate salesman within the meaning of this act is one who for a compensation is employed by a licensed broker to sell, or offer for sale, or to list, or to buy, or to offer to buy, or to negotiate the purchase or sale or exchange of real estate, or to solicit for prospective purchasers of real estate, . . . as a whole or partial vocation.

"The provisions of this act shall not apply to any person, copartnership or corporation who shall perform any of the acts aforesaid with reference to property owned by such person, copartnership or corporation; . . .

"One act, for compensation of buying or selling real estate of or for another, or offering for another to buy or sell or exchange real estate, . . . shall constitute the person, copartnership or corporation making such offer, sale or purchase, . . . a real estate broker or salesman within the meaning of this act.

"Sec. 17. Any person or corporation acting as a real estate broker or real estate salesman within the meaning of this act without a license as herein provided shall, upon con-

viction thereof, if a person, be punished by a fine of not exceeding five hundred dollars, or by imprisonment in the county jail for a term not to exceed six months, or by both such fine and imprisonment in the discretion of the court; or if a corporation, be punished by a fine of not to exceed five thousand dollars.

"Sec. 20. No person, copartnership or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts of the state for the collection of compensation for the performance of any of the acts mentioned in section two hereof without alleging and proving that such person, copartnership or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

Appellant has cited a number of authorities in support of his contention to the effect that a person, copartnership or corporation, engaged in buying or selling real estate, as agent for the owner, for a compensation, must be licensed under the terms of the Real Estate Brokers' Act at the time of the transaction, in order to be able to maintain an action against anyone for a brokerage commission. We have no doubt as to the correctness of these decisions when applied to the facts of these particular cases, but they have no application to the case at bar. Respondent was not dealing with Macklin as an agent in the sale of his property, but rather as a purchaser and owner of the property and, therefore, the act in question had no application to him, as will more fully appear hereafter.

Respondent secured in the name of his aunt, from the owner, J. H. Macklin, an exclusive thirty-day option to purchase the Fedora Hotel, for the sum of $50,000 net to the seller, payable on the terms stated in the option. The option was taken in the name of the respondent's aunt, whose property he had under his control, in order to protect any profit which might result from a sale of the property over and above the $50,000 to be paid to Macklin and the commission to be paid to Garland & Company, in accordance with the suggestion of the appellant. So far as shown by the evidence, respondent secured the option with-

out assistance or contribution from his aunt. Respondent was, therefore, the equitable owner of the option, while his aunt held the naked legal title thereto, subject to his direction. Respondent exercised the option in favor of Evelyn Davies, who became the purchaser of the property from Macklin under the terms of the option. This was the equivalent of a purchase of the property from Macklin by respondent and a sale thereof by him to Davies. Respondent stood, in relation to this property both as purchaser and seller. He was not the agent of Macklin, either in buying or selling the property, under the terms of his option.

In the case of *Robinson* v. *Easton, Eldridge & Co.*, 93 Cal. 80 [27 Am. St. Rep. 167, 28 Pac. 796, 797], the Supreme Court construed an instrument similar in effect to the option here under consideration. The instrument referred to read as follows:

''We hereby authorize Easton & Eldridge, for us, and within five days from date hereof, and until this authority is canceled in writing by us, to sell for the sum of $10,000— net dollars—the following described property situated in the city and county of San Francisco, state of California, to wit: 'All of block 935 outside lands; and we will pay said Easton & Eldridge a commission of all over said sum of $10,000, net, for which they may sell said property with our consent.' ''

In construing this instrument, the court used language which is equally apt to the opinion we are considering. The court said:

''The relation of the defendant to the plaintiffs was not that of a mere agent. While its authority to sell the land was derived from the plaintiffs, yet the sale was to be made for its own account and benefit, as well as for that of the plaintiffs. Although the authority to sell was not so coupled with an interest as to create in the defendant an interest in the land, or to prevent the plaintiffs from revoking the authority, yet by the terms of the authorization the defendant acquired such a right to a portion of the proceeds of sale as to enable it to make a contract of sale upon terms of its own choosing. The plaintiffs, in effect, gave to the defendant an option for five days to endeavor to sell the block of land for whatever sum it could obtain, and upon whatever terms it might make, provided they should

receive therefor the sum of ten thousand dollars, and agreed that defendant should have whatever sum it could realize therefor above that amount. The relation thus created between them was rather that of a vendor and purchaser under a contract of sale than one of principal and agent, and a sale by the defendant thereunder was in the capacity of a vendor upon its own account, and not for the account of the plaintiffs. Inasmuch as the defendant was entitled to all the proceeds of the sale in excess of ten thousand dollars, it had the right to make the sale upon such terms as in its judgment would enable it to realize the highest price for the land. Upon a sale by it the plaintiffs were entitled to the immediate payment of the ten thousand dollars, but the defendant could sell the land either for cash or upon time, as it might choose, and its terms of sale did not require ratification by the plaintiffs." (See, also, *Smith* v. *Blodget*, 187 Cal. 236 [201 Pac. 584].)

For the reasons above stated and upon these authorities, we hold that the relation between Macklin and respondent, created by the option in the case at bar, was that of vendor and purchaser, rather than that of principal and agent. It follows, therefore, that respondent was not required by the Real Estate Brokers' Act to be licensed, either as a broker or salesman, in negotiating the sale under his option, being specifically exempted therefrom by section 2, which exempts the owner of real property from a compliance with the provisions of said act, in case of sales made by himself. Moreover, there was nothing in the act which prohibited the appellant, who was a duly licensed real estate salesman, from assisting the respondent, as owner, in negotiating the sale of the property under option, in the manner in which he did assist in that purpose. Furthermore, the object of the joint adventure, between appellant and respondent, was not to engage in the business of buying and selling real estate nor to act in the capacity of real estate brokers or salesmen for third persons, or for anyone other than the respondent, who was acting in the capacity of owner of the property to be sold. We are of the opinion, therefore, that the joint alventure in this case did not come within the provisions of the act referred to and consequently respondent was not required to secure a license as broker or salesman in this transaction.

■ Joint adventurers in the purchase and sale of property must act in the highest good faith toward each other and may not make any secret profits out of the transaction not shared by the others. In this respect, each of the parties is agent and trustee of the others and he must account in accordance with the terms of the agreement between them (*Munson* v. *Fishburn,* 183 Cal. 206 [190 Pac. 808]; *Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36 [18 L. R. A. (N. S.) 1106, 97 Pac. 10]; *Menefee* v. *Oxnam,* 42 Cal. App. 81 [183 Pac. 379]). ■ One party to a joint adventure may sue another at law for a breach of contract or for a share of profits, where the adventure has been closed and he is entitled to a certain sum as his share. (*Keyes* v. *Nims, supra.*) ■ The appellant in this case, without the knowledge or consent of his coadventurer, bought, through a dummy, the property held under option by the respondent, his coadventurer, the sale of which property was the subject matter of their joint adventure, and appellant then sold the same at a profit to himself of $6,729.20 in cash and an undivided half interest in certain real property commonly known as No. 422 South Alexandria Avenue, Los Angeles. The sale to the dummy realized a profit of $2,500, which was divided between the joint adventurers and W. M. Garland & Company, as a commission, in accordance with the joint adventure agreement, but appellant refuses to divide with his coadventurer the secret profit which he realized on the resale of the property.

It is found that appellant knew that the property had a market value in excess of the price named in the option and that he paid, out of his own moneys, one-half of the purchase price paid therefor by the dummy; and it is a fair inference from the findings that appellant knew, at the time of the sale to the dummy, of a purchaser who would pay a higher price for the property than was obtained from the dummy. It was the duty of appellant to obtain for the property the highest possible price for the benefit of the joint adventure and, according to his agreement, to divide the profits share and share alike with his coadventurer, after payment of the agreed amount to W. M. Garland & Company. This division, which the appellant refuses to make, is required by the judgment of

the court in this case and we see no reason for disturbing the same.

Accordingly, the judgment appealed from is affirmed.

Jennings, Acting P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was dened by the District Court of Appeal on September 18, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 15, 1931.