[Civ. No. 8665. First Appellate District, Division Two.—June 2ᵇ, 1933.]

BENJAMIN FINK, Respondent, v. WILLIAM WEISMAN et al., Defendants; JOSEPH TOPLITZKY, Appellant.

Freston & Files, Smith & Breslin, O'Melveny, Tuller & Myers and Louis W. Myers for Appellants.

Henry E. Carter, Wheeler & Wackerbarth and Henry O. Wackerbarth for Respondent.

DOOLING, J., *pro tem.*—We granted respondent's petition for rehearing as to appellant Toplitzky to give further consideration to respondent's claim that the instruction which we held prejudicially erroneous to Toplitzky was substantially similar to certain instructions requested by Toplitzky and hence the error was invited error of which Toplitzky could not complain. ▇ ▪ We are satisfied that there is nothing in this point. The instruction, the giving of which we held was prejudicial error, was as follows: "If the defendant Toplitzky, at the time when he acted as broker in these deals, knew that the property was being purchased for Mr. Fink and Mr. Weisman jointly, then he owed the duty to divulge to Mr. Fink all he knew with respect to the transaction, including the purchase price."

The proposed instruction, most strongly relied upon by respondent as substantially similar, read: "The defendant Toplitzky was under no duty or obligation to disclose to the plaintiff the purchase price of said properties, nor to disclose to plaintiff, Fink, any of the circumstances surrounding said purchase, unless at or prior to the purchase

thereof the defendant Toplitzky was advised that said properties were being purchased for or in behalf of plaintiff, Fink, or for and in behalf of plaintiff, Fink, and the defendant Weisman, as copartner.''

An examination of the instruction given and the instruction proposed will show that they are not substantially similar. The instruction given relates to the case where the jury finds that Toplitzky knew of Fink's interest. The proposed instruction relates to exactly the opposite case, where the jury finds that Toplitzky did not know of Fink's interest. A perfectly correct statement of law is involved in the proposed instruction. Unless Toplitzky knew of Fink's interest he could owe no duty of disclosure to Fink. But that is not the same thing at all as saying, as the court did in the instruction given, that if Toplitzky did know of Fink's interest he owed Fink a duty of disclosure. We have held that Toplitzky would only owe Fink a duty of disclosure: 1. If he knew of Fink's interest; 2. If he was acting for Fink in the transaction; and 3. If he had reason to believe that Weisman, if Weisman had knowledge of the facts, was concealing them from Fink. Toplitzky might have proposed instructions negativing each of these conditions separately and advising the jury that in the absence of such condition he owed no duty of disclosure to Fink. That would not justify the court in giving an instruction that given one of such conditions only, without the other two, Toplitzky would owe Fink a duty of disclosure.

A simple example will make this clear. Suppose A is on trial for the murder of B and proposes an instruction that unless B died within a year and a day after receiving the fatal wound A should not be found guilty of murder. That would not justify the court in instructing the jury that if B did die within a year and a day they should find A guilty of murder. The two cases seem to be exactly parallel.

Respondent's further claim that it does not appear from the record that the instruction held erroneous was not given at Toplitzky's request seems frivolous and is only noticed because it was again urged in his petition for rehearing. The record lists the instructions requested by Toplitzky and this instruction does not appear among those so listed. We are satisfied that this is a sufficient showing on this point.

■ For the first time respondent urged on petition for rehearing that Toplitzky interjected the question whether he had a fiduciary relationship to Fink into the case by his answer. We might ignore this point as raised too late. (2 Cal. Jur., pp. 790–792.) However, the complaint counted on Toplitzky's concealment and as we pointed out in our original opinion Toplitzky would owe no duty of disclosure in the absence of a fiduciary relationship.

■ Lastly respondent claims in his petition for rehearing that the instruction held erroneous was properly applicable to the fifth count of the complaint which charged a conspiracy. It is a complete answer to this that we cannot know whether the jury found a conspiracy under the fifth count or merely a breach of duty as alleged in the first four counts of the complaint.

We are satisfied with the disposition of Toplitzky's appeal in our opinion filed herein on January 28, 1933, and readopt that opinion in all respects.■

The judgment against appellant Toplitzky is reversed and the cause remanded for a new trial as to Toplitzky, with directions to the trial court to allow the amended complaint to be further amended, if plaintiff so desires, to correct the defects therein attacked on this appeal.

Nourse, P. J., and Sturtevant, J., concurred.

DOOLING, J., *pro tem.*—Separate appeals are prosecuted by defendant William Weisman and defendant Joseph Toplitzky from a judgment entered against both defendants pursuant to the verdict of a jury. The action was to recover secret profits in the purchase of four separate pieces of real property in each of which plaintiff Fink purchased a one-half interest through defendant Weisman at a price in excess of that agreed by Weisman to be paid to the vendor. Defendant Toplitzky was interested in the transaction as a real estate broker and since the relationship between Fink and Weisman in the transactions and that between Fink and Toplitzky were substantially different

we shall for the sake of clarity consider the two appeals separately.

## The Weisman Appeal.

In so far as the evidence may be conflicting it is axiomatic that on appeal we must consider the evidence most favorable to respondent. Pursuant to that rule we are justified in making the following statement of facts, although as to some of them there was a sharp conflict in the evidence:

Fink came to Los Angeles in March, 1920, and there met Weisman, who is his wife's uncle and whom he had known for many years. In June or July, 1920, Fink and Weisman discussed the matter of buying real estate together. Thereafter Weisman told Fink that the Woodward Hotel could be purchased for $245,000, $210,000 for the building and $35,000 for the furniture, and suggested that Fink put up one-half the money for a one-half interest in the property; that the deal was to be on a 50–50 basis and they could buy the property and operate the hotel together. Later Weisman introduced Fink to Toplitzky, who was acting for the seller, and Toplitzky in Weisman's presence repeated the statement as to the price at which the property could be purchased. Pursuant to these representations Fink paid $17,500 for a one-half interest in the furniture and $12,500 as one-half the down payment on the realty. In truth the purchase price of building and furniture was $210,000 in all, and as a result Fink paid $17,500 more than the price of one-half the property. At the time of the purchase by Fink, Weisman had a contract to buy the entire property but the deed was not received from the seller until after Fink had made his payments. Weisman deeded a one-half interest to Fink, the deed reciting: ''There having been no money paid for this deed, no United States Revenue Stamps are required.''

Thereafter the Woodward Hotel was operated by Fink and Weisman as a partnership business.

After the purchase of the Woodward Hotel and in September, 1920, Fink, Weisman and Toplitzky were together in Toplitzky's office. Both Toplitzky and Weisman told Fink that the Chandler Hotel could be bought for $235,000 with a payment of $75,000 in cash and Toplitzky said that ''each of the partners'' could pay $37,500. After this con-

versation Weisman left Los Angeles and before going told Fink that Toplitzky would handle the deal. The property was purchased, the seller deeding to Weisman and Weisman in turn deeding a one-half interest to Fink. The deed from Weisman to Fink contained a recital with regard to revenue stamps similar to that quoted above. By reason of the false representations of Weisman and Toplitzky, Fink paid $17,500 in excess of one-half of the price of this property.

In October of the same year Toplitzky and Weisman suggested to Fink that Fink and Weisman buy the Weymouth apartments. Both Weisman and Toplitzky said the price would be $180,000 or $185,000 depending upon whether the seller or the buyers paid the commission. Later, Toplitzky stated that "the partnership" was to pay the commission. Weisman himself closed the deal with the owner who lived in Billings, Montana. The actual purchase price was $130,000 and Fink paid $25,000 in excess of one-half that amount. Fink again received a deed from Weisman to a one-half interest, the deed reciting:

"This deed is made to complete the transaction wherein William Weisman and Benjamin Fink purchased said property of C. W. Bair and wife and the title thereto was taken in the name of said William Weisman alone; and since no further consideration has been paid by said Benjamin Fink, to said first parties or either of them for this deed no internal revenue stamps are required hereon."

In June, 1921, while Weisman was away from Los Angeles, Toplitzky told Fink that Fink and Weisman could buy the Leonide Hotel for $250,000 and that the deal could be handled by a $35,000 down payment by Fink and a like payment by Weisman. Toplitzky further stated that he had discussed it with Weisman and that Weisman would be willing to go into the deal. The property was purchased by Fink and Weisman, Fink paying on the basis of the price stated though in fact the price was $30,000 less, as a result of which Fink paid $15,000 in excess of one-half the purchase price.

The judgment is for the sum of $75,000, the total of Fink's payments in excess of one-half the purchase price of the several properties, with interest on the various sums making up this total from the dates of their payment.

■ It is first contended on behalf of appellant Weisman that under the evidence Fink and Weisman were not general partners for the purchase of real estate, but that in each case Weisman first contracted to buy the several properties and then in turn sold a one-half interest to Fink. On the basis of these facts it is then argued that an owner of property who was not a fiduciary at the time that he purchased it may sell an interest in it to one whom he afterward interests in buying it without being bound to disclose the profit that he may realize from the transaction. In support of this rule appellant cites *Densmore Oil Co.* v. *Densmore*, 64 Pa. St. 43; *In re Cape Breton Co.*, L. R. 29 Ch. Div. 725; *Erlanger* v. *New Sombrero Phosphate Co.*, L. R. 3 App. Cas. 1218; *Burland* v. *Earle*, L. R. App. Cas. (1902) 83; *Ladywell Min. Co.* v. *Brookes*, L. R. 35 Ch. Div. 400; *Withroder* v. *Elmore*, 106 Kan. 448 [188 Pac. 428, 10 L. R. A. 191]; *Murray* v. *Close*, 118 Kan. 51 [234 Pac. 60]. These cases may be fairly said to announce the principle that where one buys property when no fiduciary relationship exists and afterward sells it or an interest in it to persons whom he associates with himself, since the original purchase was not made at a time when he owed such associates any fiduciary obligation, he need not disclose the original purchase price and cannot be held liable for any profit that he may make. Conceding this to be the law, in all of these cited cases the acquisition of the property was complete before the fiduciary relation arose. But in each of the four purchases here involved Weisman at most had an executory contract to purchase the property when he contracted with Fink for the purchase by Fink of a one-half interest therein. When such agreement was made Weisman then assumed toward Fink a fiduciary relationship. He, in effect, undertook to give Fink a one-half interest in his uncompleted contract to purchase and made himself Fink's associate therein. This being so, the situation is not the same as if Weisman had previously bought and paid for the property and taken title to it before the negotiations for the sale of a one-half interest to Fink.

In *Humburg* v. *Lotz*, 4 Cal. App. 438 [88 Pac. 510, 511], the defendant had an agreement with the owner of a patent giving him the exclusive right to buy for $5,000 said patent rights in a certain territory or to sell the same for $8,000

and receive a $3,000 commission. While this agreement was in force defendant entered into an agreement with plaintiff by which each purchased a one-half interest in such patent, the plaintiff paying $4,000. The court said:

"The defendant concealed from the plaintiff that he could purchase the letters patent and devices for $5,000, and by such concealment procured the plaintiff to pay $3,000 more into the business than the defendant paid. . . .

"When the plaintiff and defendant agreed to enter into the common enterprise together, each one became the agent of the other in regard to the purchase of the property and the management of the business. They occupied fiduciary relations to each other, and neither one could take advantage of the other for his own benefit by dealings in the name of both and in furtherance of the common enterprise. Defendant was bound to act in the highest good faith to plaintiff. He will not be allowed to obtain any advantage over him by misrepresentation or concealment."

In *Thimsen* v. *Reigard*, 95 Or. 45 [186 Pac. 559, 562], the Supreme Court of Oregon quotes the following from *Sandoval* v. *Randolph*, 222 U. S. 161 [32 Sup. Ct. 48, 56 L. Ed. 142]:

"Where one agrees to act as agent to purchase property at not exceeding a specified price, he cannot avail himself of an unexpired option antedating the employment to purchase the property at a less price himself and make the difference."

We are satisfied that where one has merely an executory contract to purchase property and associates another with him in such purchase under an agreement by which the other advances his share of the purchase price toward the performance of the contract that they assume toward one another a fiduciary relation and that the concealment or misrepresentation of the purchase price becomes an actionable wrong. "Joint adventurers in the purchase and sale of property must act in the highest good faith toward each other and may not make any secret profits out of the transaction not shared by the others." (*Tufts* v. *Mann*, 116 Cal. App. 170, 183 [2 Pac. (2d) 500]; *Menefee* v. *Oxnam*, 42 Cal. App. 81 [183 Pac. 379]; *Keyes* v. *Nims*, 43 Cal. App. 1 [184 Pac. 695]; *Stenian* v. *Tashjian*, 178 Cal. 623 [174 Pac. 883].)

█ It is further claimed that the first four counts in the complaint stated equitable causes of action and that the failure of the court to make findings thereon is reversible error. The first four counts are in substantially similar language and the first count may be taken as the pattern of all. It is alleged in the first count that in July, 1920, Fink and Weisman entered into a partnership agreement for the purchase, operation and sale of realty, each to contribute one-half the purchase price and share equally in the profits; that Weisman thereafter represented that the partnership could purchase the Woodward Hotel for $210,000 for the realty and $35,000 for the furniture; that prior to the time such representations were made Weisman and Toplitzky had entered into an agreement to purchase all of said property for $210,000, with further appropriate allegations of belief and reliance upon such representations and an allegation that plaintiff thereby paid out $17,500 more than he would otherwise have paid to his damage in that amount.

Under the authorities this clearly stated a cause of action for damages for deceit. (*Keyes* v. *Nims,* 43 Cal. App. 1 [184 Pac. 695]; *King* v. *Wise,* 43 Cal. 628; *Tufts* v. *Mann,* 116 Cal. App. 170, 183 [2 Pac. (2d) 500]; *Stenian* v. *Tashjian,* 178 Cal. 623 [174 Pac. 883].) The parties had disposed of all the properties and settled all their accounts long before the action was commenced, the amounts to be recovered were definite and certain and there was no necessity for recourse to equity. The situation was no different from that in *King* v. *Wise, supra,* where the court said, at pages 634, 635:

"The rule, which requires a rescission of the contract upon the discovery of fraud, has no application to this case. The contest is not between a vendor, who has made fraudulent misrepresentations in regard to the property sold, and the vendee who has been misled and injured by the fraud. The plaintiffs may have been willing to purchase the land at the price they paid, or at even a larger price, and may not wish to rescind the sale; but they are none the less entitled to hold the defendant to a strict observance of the trust confided to him, and to enjoy their proportionate benefit of any bargain he may have made. They do not complain that they were induced to pay more than the land was

worth, but that they would have paid less if the defendant had been faithful to his trust. By their affirmance of the contract, after knowledge of the fraud, they lost any right they may have had to rescind the sale and recover back the purchase money; but it was not a release of their right of action against the defendant for damages resulting from the fraudulent acts. We are of the opinion that the plaintiffs should have judgment upon the facts as found by the court.

"It is not difficult to arrive at the exact measure of damages which plaintiffs are entitled to recover. The actual value of the land is not an element in the estimate. The plaintiffs should have from the defendant the difference between the price of the land purchased by him for the plaintiffs and the amount paid by the plaintiffs."

The case of *King* v. *Wise, supra,* has been frequently cited and received the full approval of the Supreme Court as late as *Langford* v. *Thomas,* 200 Cal. 192, 199 [252 Pac. 602].

Both as to the right to maintain an action at law in such a case and the proper measure of damages the rule announced in *King* v. *Wise, supra,* accords with the general rule stated in 33 C. J., pages 857, 858, section 53, in the following language:

"But the defrauded member is not bound to rescind. He may, if he chooses to do so, retain his interest in the contract, and recover damages for the fraud and deceit, the measure thereof being the difference between the amount actually paid by plaintiff and what he would have paid had defendant dealt honestly with him; and the fact that the actual value of the property was greater than the price paid for it does not defeat the action."

The decisions from other jurisdictions to this effect are legion: *Allen* v. *Barhoff,* 90 Conn. 183 [96 Atl. 928]; *Lowe* v. *Hendrick,* 86 Conn. 481 [85 Atl. 795]; *Jones* v. *Kinney,* 146 Wis. 130 [131 N. W. 339, Ann. Cas. 1912C, 200]; *Bergeron* v. *Miles,* 88 Wis. 397 [60 N. W. 783, 43 Am. St. Rep. 911]; *Davenport* v. *Buchanan,* 6 S. D. 376 [61 N. W. 47]; *Johnson* v. *Gavitt,* 114 Iowa, 183 [86 N. W. 256]; *Pendergast* v. *Reed,* 29 Md. 398 [96 Am. Dec. 539]; *Hampson* v. *Spong,* 103 Kan. 400 [173 Pac. 909]; *Jameson* v. *Kempton,* 52 Wash. 106 [100 Pac. 186]; *Mayo* v. *Wahlgreen,*

9 Colo. App. 506 [50 Pac. 40] ; *Hindle* v. *Holcomb*, 34 Wash. 336 [75 Pac. 873].

The complaint asked for no equitable relief but simply for a money judgment. We conclude that it was an action at law and after a jury trial findings were unnecessary.

■ After the entry of judgment and while motions for new trial were pending Fink procured an alternative writ of prohibition from the District Court of Appeal of the Second Appellate District, Division Two, by which he attempted to prohibit the trial court from passing on the motions for new trial. The writ was quashed (*Fink* v. *Superior Court* 105 Cal. App. 540 [288 Pac. 124]) and the superior court afterward acted on the motions for new trial and denied them. In his points and authorities in the prohibition proceeding Fink argued that his action was in equity. It is claimed that by taking that position he has estopped himself from now urging the contrary on this appeal. We fail to see any ground for estoppel. A necessary element of estoppel is prejudice to the party invoking it. If Fink had succeeded in his attempt to prohibit the court from acting on the motion for new trial prejudice to appellants would have resulted and it might well be held that he would be estopped to take a different position now. But he did not succeed in that attempt. He failed, and the trial court acted upon the motions. How, then, can he be estopped to urge the correct construction as to the nature of his action because he misconceived the law in a collateral proceeding from which he gained no benefit and appellants suffered no detriment?

■ It is further argued that the fifth count of Fink's amended complaint stated no cause of action because it did not allege a fiduciary relation between Fink and Weisman. The fifth count pleaded a conspiracy between Weisman and Toplitzky to misrepresent the purchase price of all four properties and thereby induce Fink to pay more than one-half thereof. It did not allege in terms a partnership or joint adventure between Fink and Weisman and might have been subject to demurrer, but no demurrer was interposed. The trial proceeded on the theory that it charged a conspiracy to defraud Fink in partnership transactions. Having made this issue on the trial appellants cannot now attack the insufficiency of the complaint in that

regard. (*Slaughter* v. *Goldberg, Bowen & Co.,* 26 Cal. App. 318 [147 Pac. 90]; *Snyder* v. *City Bond & Finance Co.,* 106 Cal. App. 745 [289 Pac. 859]; *Asnon* v. *Foley,* 105 Cal. App. 624, 629 [288 Pac. 792]; *Bridges* v. *Price,* 95 Cal. App. 394 [273 Pac. 72].)

The transactions which are the basis of Fink's recovery occurred in 1920 and 1921. The action was not commenced until 1928. In order to bar the application of the statute of limitations, by an amendment to his amended complaint Fink alleged that he did not discover the misrepresentations until May, 1927, at which time he first learned of them through an investigation of the partnership books by an investigator for the Internal Revenue Department who was investigating their income tax returns together with facts showing his complete reliance upon Weisman and Toplitzky up to that time and entire trust in them and lack of suspicion of their conduct. As to Weisman, there is no claim in the briefs that these facts, if true, were not sufficient to bar the running of the statute of limitations until the date of discovery. There was a sharp issue on the trial as to when the discovery was made, several witnesses testifying that at a much earlier date Fink told them that Weisman had defrauded him in these transactions. The issue was fairly submitted to the jury and by them decided in favor of Fink. On motion for new trial appellants produced, as newly discovered evidence, the affidavits of several additional witnesses to similar conversations with Fink long prior to 1927. This evidence was merely cumulative and no sufficient explanation was given of the failure to discover it earlier. Under settled principles the granting or denying of a new trial on that ground lay peculiarly in the discretion of the trial ·court and we are not justified in re-examining the question under the facts appearing here.

By stipulation the ·appeal of Weisman was submitted on ‚the briefs filed on behalf of Toplitzky. We have covered those points in Toplitzky's briefs which we think fairly relate to Weisman's appeal. This has been somewhat difficult, since Toplitzky's counsel have confined their argument in greater part to Toplitzky's rights and only incidentally, where they conceived that Toplitzky's rights were also involved, have they referred to any claimed error as to Weis-

man. In view of the manner in which Weisman's appeal was submitted a needless and onerous burden not contemplated by the law has thus been cast upon us to go through Toplitzky's brief and cull out those parts which we considered might, if decided in Toplitzky's favor, inure to the benefit of Weisman as well. This burden could have been immeasurably lightened had Weisman filed even a brief memorandum stating those points made by Toplitzky upon which he relied for a reversal. Weisman has given the court not even this assistance and we apprehend should be foreclosed from claiming that we may have overlooked some point in Toplitzky's briefs favorable to him which has not been herein discussed.

Toplitzky, in his brief, makes many claims of errors in instructions. Some of the instructions complained of by Toplitzky were given at Weisman's request, many of them concern only Toplitzky's liability, and as to the rest we are satisfied that the jury was fairly instructed as to the facts upon which Weisman might be held liable.

Having discovered no prejudicial error as to Weisman, we conclude that as to him the judgment should be affirmed.

### The Toplitzky Appeal.

In so far as the points discussed hereinabove are common to both appellants we will not restate them in the consideration of Toplitzky's appeal.

■ Toplitzky complains of a variance between pleading and proof as to the first four counts because of the allegations therein that Toplitzky and Weisman secured the contracts to purchase the several properties whereas the proof showed Weisman secured the contracts and Toplitzky's only interest was that of a broker. The trial proceeded on the theory that Toplitzky was a broker and not a principal and the jury was instructed on that theory. Toplitzky, having tried the case on that theory in the trial court, cannot complain of the variance on appeal.

■ To Toplitzky's claim that the first four counts do not state a cause of action against him because there is no allegation that Toplitzky knew of the confidential relation between Weisman and Fink there are two answers. Toplitzky did not demur and the counts at least inferentially charged such knowledge by alleging that Toplitzky represented to Fink that "the partnership" between Fink and

Weisman could purchase the properties at certain prices. Second, the trial proceeded on the theory that Toplitzky's knowledge was in issue and the jury were instructed that if Toplitzky did not know of the confidential relationship he could not be held liable.

As to the fifth count Toplitzky urges that it stated no cause of action against him because it was an action for deceit and since the value of the properties was neither alleged nor proved there can be no recovery. However, as we have said above, the trial proceeded on the theory that the fifth count involved a conspiracy to defraud Fink while he occupied a confidential relation with Weisman and the jury was instructed on that theory. One who knowingly aids and abets a fiduciary to make secret profits may be held liable jointly with the fiduciary for such secret profits. (*Jackson* v. *Smith*, 254 U. S. 586 [41 Sup. Ct. 200, 65 L. Ed. 418]; *Lomita Land & Water Co.* v. *Robinson*, 154 Cal. 36 [97 Pac. 10, 18 L. R. A. (N. S.) 1106]; *Victor Oil Co.* v. *Drum*, 184 Cal. 226 [193 Pac. 243]; *Smith* v. *Blodget*, 187 Cal. 235 [201 Pac. 584].) There was ample evidence from which the jury might have found that Toplitzky, knowing that Fink was interested jointly with Weisman in the purchase of the properties, actively misrepresented their price to Fink to enable Weisman to make a secret profit. In such circumstances Toplitzky under the above authorities would be jointly liable with Weisman although he himself may not have profited by the perfidy.

These cases are a complete answer to Toplitzky's claim that as to him the statute of limitations must be held to have run because the actions against him are not based on fraud. If Toplitzky made fraudulent misstatements to Fink as a result of which Fink was damaged by the payment for one-half the properties of more than one-half their price, the action against Toplitzky sounds in fraud and the measure of the damages is the difference between what Fink paid and what he would have paid but for Toplitzky's fraud.

However, Toplitzky denied having made any statements to Fink as to the price of the properties or any of them and the court undertook to instruct the jury as to Toplitzky's liability for concealment as well as active misrepresentation. It seems obvious that Toplitzky could be

liable for a failure to disclose to Fink the true purchase price of the properties only if Toplitzky occupied a fiduciary relation to Fink in the transactions. If he actively misrepresented to Fink the purchase prices he would then be making himself a party to Weisman's fraudulent conduct and by aiding and abetting Weisman's fraud he would render himself liable to Fink jointly with Weisman. But unless Toplitzky occupied a fiduciary relation to Fink he would be under no duty to speak and could not render himself liable to Fink by his mere silence. The suppression or concealment of a fact is only actionable when done "by one who is bound to disclose it". (Civ. Code, sec. 1710, subd. 3.) "In the absence of confidential relations, mere silence without fraudulent acts or omissions connected therewith would not be unconscionable." (*Heydenfeldt* v. *Osmont,* 178 Cal. 768, 773 [175 Pac. 1, 3]; 12 Cal. Jur., p. 773, sec. 44.)

 It was the claim of Toplitzky that in none of the transactions did he represent Fink, that in two he represented the sellers, in one Weisman, and in one that Weisman handled the details himself and that at no time did he misrepresent to Fink the prices at which the properties were being purchased. With this evidence in mind we now approach the instructions given to the jury in relation to Toplitzky.

The court instructed the jury: "If the defendant Toplitzky, at the time when he acted as broker in any of these deals, knew that the property was being purchased for Mr. Fink and Mr. Weisman jointly, then he owed the duty to divulge to Mr. Fink all he knew with respect to the transaction, including the purchase price."

It is to be observed of this instruction that it placed upon Toplitzky the duty of disclosing all he knew with respect to the transaction at the time when he acted as broker if he knew the property was being purchased jointly for Fink and Weisman. This could not be the law in those transactions in which Toplitzky was acting as broker for the seller unless he also undertook to act as broker for Fink and Weisman. And yet under this instruction the jury could find Toplitzky liable, even though they might find that in the transaction Toplitzky owed no fiduciary

duty to Fink and was acting entirely for the seller, if Toplitzky, knowing Fink was interested in the purchase, did not tell him the purchase price. Why should he be legally bound to do so if, as the jury might have found, he was representing the seller and dealing with both Fink and Weisman at arm's length? It is also to be observed of this instruction that it put the absolute duty upon Toplitzky to disclose to Fink all that he knew of the transaction regardless of whether Toplitzky knew that Weisman was deceiving Fink or not. Under this instruction the jury might have held Toplitzky liable if they found the following state of facts: that Toplitzky stated the purchase price to Weisman; that Weisman deceived Fink as to the purchase price; that Toplitzky not knowing of Weisman's deceit and believing that Fink knew the purchase price failed to speak of it to Fink. In view of the sharp conflict in the evidence as to the facts we cannot but conclude that this instruction was prejudicially erroneous. The vice of this particular instruction was aggravated by a statement of the court which immediately preceded it to this effect:

"Now, Ladies and Gentlemen, with reference to the liability, if any, of the defendant, Joseph Toplitzky, I want to restate an instruction with reference to that, and if the other instructions which I have given you, or any which I may hereafter give you, in respect to his liability may seem to you to be incompatible with the instructions I now give you, you will disregard the other instructions, because the instructions I give you now, are an explanation of what the Court considers the law in regard to his liability."

The instruction hereinabove discussed and held to be erroneous followed immediately. Thus the jury were told that in respect to Toplitzky's liability this particular instruction embodied the court's idea of the law and was to be followed by the jury and any other instruction which might seem incompatible with it was to be by them disregarded. In the face of this there is no room for the claim that this instruction could have been cured by any other instruction or instructions or that the instructions taken as a whole were correct. The trial judge was at great pains to single out this erroneous instruction and tell the jury that it and it alone was the correct rule by which to determine Toplitzky's liability.

Other instructions are complained of but they are not likely to be repeated in their present form in a trial against Toplitzky alone.

It results from what we have said above that the judgment against defendant Toplitzky must be reversed.

The judgment against appellant Weisman is affirmed.

The judgment against appellant Toplitzky is reversed and the cause as to him remanded for a new trial, with directions to the trial court to allow the amended complaint to be further amended, if plaintiff so desires, to correct the defects therein attacked on this appeal.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 21, 1933.